ASSOCIATED BUILDERS and CONTRACTORS, INC., Petitioner,

v.

William E. BROCK, Secretary of Labor, and John A. Pendergrass, Assistant Secretary for Occupational Safety and Health, and the Occupational Safety and Health Administration, United States Department of Labor, Respondents,

National Association of Home Builders, American Subcontractors Association, American Fire Sprinkler Association, Associated Specialty Contractors, Association of the Wall and Ceiling Industries–International, Insulation Contractors of America, Mason Contractors Association of America, Mechanical Contractors Association of America, National Association of Cold Storage Contractors, National Association of Plumbing, Heating and Cooling Contractors, National Electrical Contractors Association, National Glass Association, National Insulation Contractors Association, National Roofing Contractors Association, National Utility Contractors Association, Painting and Decorating Contractors of America, and the Sheet Metal and Air Conditioning Contractors National Association (all of the above herein referred to as the Construction Industry Trade Associations) United Technologies Corporation, Associated General Contractors of Virginia and the Associated General Contractors of America, Building and Construction Trades Department, AFL–CIO, United Steelworkers of America, AFL–CIO, CLC, National Paint and Coatings Association, National Grain and Feed Association, Inc., Intervenors.

The NATIONAL GRAIN & FEED ASSOCIATION, INC., Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, UNITED STATES DEPARTMENT OF LABOR, Respondent,

National Paint and Coatings Association, Public Citizen, Inc., and the Connecticut Council on Occupational Safety and Health ("ConnCOSH"), Intervenors.

The ASSOCIATED GENERAL CONTRACTORS OF VIRGINIA and The Associated General Contractors of America, Petitioners,

v.

OCCUPATIONAL SAFETY and HEALTH ADMINISTRATION, UNITED STATES DEPARTMENT of LABOR, Respondent,

United Technologies Corporation, United Steelworkers of America, AFL–CIO, CLC, The National Grain and Feed Association, Inc., Building and Construction Trades Department, AFL–CIO, Intervenors.

UNITED TECHNOLOGIES CORPORATION, Petitioner,

v.

The OCCUPATIONAL SAFETY and HEALTH ADMINISTRATION, UNITED STATES DEPARTMENT of LABOR, Respondent.

Nos. 88–3345 to 88–3348.

United States Court of Appeals, Third Circuit.

Argued Sept. 16, 1988.

Decided Nov. 25, 1988.

As Amended Dec. 5, 1988.

Benjamin R. Civiletti, Robert G. Ames, Maurice Baskin (argued), Venable, Baetjer, Howard & Civiletti, Washington, D.C., for petitioner, Associated Builders and Contractors and Const. Industry intervenors.

Marc L. Fleischaker (argued), Gina M. Zawitoski, V. Daniel Palumbo, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for petitioner, Nat. Grain & Feed Ass'n, Inc.

Stephen C. Yohay (argued), Ann Elizabeth Reesman, McGuiness & Williams, Washington, D.C. (Robert E. Williams, of counsel), for petitioners, Associated Gen. Contractors of Virginia and Associated Gen. Contractors of America.

W. Scott Railton (argued), Diane F. Killioin, Susan A. Kunst, Reed Smith Shaw & McClay, Washington, D.C., for petitioner, United Technologies Corp.

George R. Salem, Sol. of Labor, Allen H. Feldman, Associate Sol. for Sp. Appellate and Supreme Court Litigation, Steven J. Mandel, for Appellate Litigation.

Nathaniel I. Spiller (argued), Edward D. Sieger, Attys., U.S. Dept. of Labor, Washington, D.C., for Secretary of Labor.

George H. Cohen, Jeremiah A. Collins, Michael H. Gottesman, John Rothchild, Bredhoff & Kaiser, Washington, D.C., Mary–Win O'Brien, United Steelworkers of America, Pittsburgh, Pa., Laurence Gold (argued), Washington, D.C., for intervenor, United Steelworkers of America, AFL–CIO, CLC.

Elihu I. Leifer, Victoria L. Bor, Christopher S. Richardson, Sherman, Dunn, Cohen, Leifer & Counts, Washington, D.C.,

for intervenor, Building and Const. Trades Dept., AFL–CIO.

Bruce H. Hamill, Washington, D.C., Timothy J. Waters, McDermott, Will & Emery, Washington, D.C., for intervenor, Nat. Paint & Coatings Assn.

David C. Vladeck, Public Citizen Litigation Group, Washington, D.C., for intervenor, Public Citizen, Inc. and the Connecticut Council on Occupational Safety and Health.

Peter L. de la Cruz, Mary Chambers Grandy, Keller and Heckman, Washington, D.C., for amicus; Styrene Information and Research Center.

Before GIBBONS, Chief Judge, HUTCHINSON and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Before the court are four petitions for review of the revised hazard communication standard promulgated by the Secretary of Labor pursuant to section 6(b) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 655(b) (OSH Act). The petitioners are the Associated Builders and Contractors, Inc. (ABC), the National Grain & Feed Association, Inc. (NGFA), the Associated General Contractors of Virginia, et al. (AGC), and United Technologies Corporation (UTC). These petitions were initially filed in the District of Columbia Circuit, the Second Circuit, and the Fourth Circuit. Since the filing in the District of Columbia Circuit was earliest, the other petitions were transferred and consolidated there. Thereafter, the Building and Construction Trades Department, AFL–CIO intervened, and on the motion of the intervenors the petitions were transferred to this court. The transfer order was made because the hazard review standard was before this court on three prior occasions. *United Steelworkers of America v. Auchter*, 763 F.2d 728 (3d Cir.1985) (*USWA I*); *United Steelworkers of America v. Pendergrass*, 819 F.2d 1263 (3d Cir.1987) (*USWA II*); *United Steelworkers of American v. Pen-*

*dergrass*, 855 F.2d 108 (3d Cir.1988) (*USWA III*). Because those prior decisions are controlling, we will deny the petition for review.

## I.

In *USWA I* this court ordered the Occupational Safety and Health Administration (OSHA) to apply its recently promulgated hazard communication standard not only to the manufacturing sector, but to the non-manufacturing sector as well, unless the agency could "state reasons why such application would not be feasible." 763 F.2d at 739. Except for a part of its treatment of trade secrets, the hazard communications standard was otherwise upheld. 763 F.2d at 743.

In *USWA II* the petitioners in *USWA I* returned to the court seeking to enforce the judgment in that case. OSHA, following the *USWA I* judgment, had issued a notice of proposed rulemaking, claiming that the record was insufficient to determine the issue of feasibility of the standard outside the manufacturing sector. This court held that OSHA was not in compliance with the *USWA I* judgment, which did not contemplate notice and comment. It ordered OSHA to promulgate, within 60 days, a hazard communications standard applicable to all workers covered by the OSH Act, or state reasons separately, as to each category of excluded workers, why, on the basis of the present administrative record, a hazard communication standard is not feasible. 819 F.2d at 1270.

In *USWA III* the original petitioners moved for further relief in enforcement of the *USWA I* judgment. By then OSHA had on August 24, 1987, published an expanded hazard communication standard applicable to all industries. 52 Fed.Reg. 31852 et seq. (codified at 29 C.F.R. § 1910.1200). This revised standard was to go into effect on May 23, 1988. 29 C.F.R. § 1910.1200(j). On September 10, 1987, however, OSHA submitted it to the Office of Information and Regulatory Affairs in

the Office of Management and Budget (OMB). OMB, ostensibly in compliance with the Paperwork Reduction Act of 1980, Pub.L. No. 96–511, 94 Stat. 2812, 44 U.S.C. § 3501 et seq. (Supp. 1988), sought public notice and comment "on the recordkeeping, notifications, and other paperwork requirements of the revised standard." 52 Fed. Reg. 36652. Following a public hearing OMB purported to disapprove three provisions which the revised standard adopted. These three new provisions were: (1) a requirement that at multi-employee worksites employers exchange Material Safety Data Sheets obtained from chemical manufacturers, 29 C.F.R. § 1910.1200(e)(2); (2) an exemption from the labeling requirements of the standard for consumer products used in the same manner and quantities as intended for consumer use, 29 C.F. R. § 1910.1200(b)(6)(vii); and (3) an exemption from labeling of drugs in table or pill form regulated by the Federal Drug Administration. 29 C.F.R. § 1910.1200(b)(6)(viii). This court held that the regulations disapproved by OMB did not involve the collection of information within the meaning of the Paperwork Reduction Act. 855 F.2d at 113. Summarizing the prior history of the case, we noted:

> In *USWA I* we directed OSHA to reconsider the application of the hazard communication standard to employees in sectors of the economy other than manufacturing unless the Secretary could state reasons why such application would not be feasible. 763 F.2d at 739 (citing 29 U.S.C. § 655(b)(5)). In *USWA II* we made it clear that our first judgment required that feasibility be determined for each category of worker on the basis of the administrative record already compiled. 819 F.2d at 1270. Thus, our prior orders represent our considered view that OSHA must cease abdicating its responsibility with respect to employees outside the manufacturing sector, by deciding whether or not they should be covered on the basis of the record. The August 24, 1987 promulgation of a hazard communication standard applicable

to all employees was a good faith compliance with those orders. The slight changes that were made in the standard were a logical outgrowth of the rulemaking record which we previously reviewed. *Cf. Action Alliance [of Senior Citizens of Greater Philadelphia v. Bowen ]* [846 F.2d 1449] at 1455 [D.C.Cir.1988] (new round of rulemaking not required for a revision that is the "logical outgrowth" of the rulemaking record). Withdrawal of the provisions disapproved by OMB was accordingly inconsistent with those orders. Relief by motion is appropriate. 28 U.S.C. § 1651(a) (1982); 5 U.S.C. § 706(1) (1982); *United States v. New York Telephone Co.,* 434 U.S. 159, 172 [98 S.Ct. 364, 372, 54 L.Ed.2d 376] (1977); *USWA II,* 819 F.2d at 1270.

855 F.2d at 113–14.

## II.

The present petitioners, unlike those who were the moving parties in *USWA I, II,* and *III,* seek to prevent enforcement of the hazard communication standard. Their objections include both procedural and substantive challenges to the promulgated standard.

### A.

*Sufficiency of Notice of Rulemaking*

■ The four petitioners contend that OSHA violated section 6(b) of the OSH Act, 29 U.S.C. § 655(b), by failing to provide adequate notice of proposed rulemaking affecting their industries. That contention is foreclosed by *USWA II,* which exhaustively detailed the fact that the scope of industry coverage had been an important issue for public comment throughout the entire regulatory proceeding. The court wrote:

> On June 28, 1977 the Secretary published an advance notice of proposed rulemaking on hazardous materials labeling. *See* 42 Fed.Reg. 5,372 (1977). In that advance notice, the Secretary requested "public comment as to whether a stan-

dard requiring employers to label hazardous materials should be developed and what should be contained in such standard to assure that employees are apprised of the hazards to which they are exposed." *Id.* All "interested persons" were "invited to submit written data, views, and arguments concerning a standard on hazardous material labeling." *Id.* at 5,373. Among the topics on which comments were requested was "[s]upported cost data of the estimated costs of coming into compliance with the recommendations of the advisory committee." *Id.* At this stage in 1977, the notice, like the Advisory Committee Report's recommendation, was addressed to all employers, not only to employers in the manufacturing sector.

819 F.2d at 1265. In the same opinion, this court recognized that the 1982 notice was at least as explicit. That notice invited comment on the appropriateness of the industry scope to be selected, and whether or not industries outside the manufacturing sector should be included. *Id.* at 1266. Thus this court's holding that the Secretary provided adequate notice to all employers was clearly stated.

The four petitioners urge that since they were not parties to the initial petition for review, they are not bound by the prior panel decision. OSHA, on the other hand, contends that the discussion of the notice of rulemaking in *USWA II* is law of the case. We need not resolve that difference, however, because in any event the facts with respect to the 1981 and 1982 notices have not changed, and a prior panel has applied the law to those facts. Thus *USWA II* is a binding precedent of the court which this panel could not disregard even if it had a mind to do so. Internal Operating Procedures of the United States Court of Appeals for the Third Circuit, 8C. Nor are we of such a mind. The notice was sufficient to alert all employers of the opportunity to submit comments as to coverage of their industry. Thus the petitioners' objections to the adequacy of notice of proposed rulemaking are rejected.

**B.**

*The Significant Risk Finding*

Several of the petitioners contend that the hazard communication standard is invalid because it was promulgated without a significant risk determination. Under sections 3(8) and 6(b)(5) of the OSH Act, 29 U.S.C. §§ 652(8), 655(b)(5), the Secretary must determine that there exists a significant risk of harm to employees and that a standard is reasonably necessary or appropriate to reduce that risk. *Industrial Union Dept. v. American Petroleum Inst.,* 448 U.S. 607, 614–15, 639, 100 S.Ct. 2844, 2849–50, 2862, 65 L.Ed.2d 1010 (1980) (plurality opinion).

The agency record on this issue was reviewed by this court in *USWA I.* The court upheld OSHA's finding that a section 6(b)(5) standard is required to address a significant risk to workers. 763 F.2d at 735. The significant risk finding applied to all workers who would be exposed to hazardous chemicals. *Id.* at 738. Indeed, the court noted the incongruity of protecting spray painters, for example, in the manufacturing sector, but not in construction. *Id.* at 737.

The agency record on this issue was reviewed once again in *USWA II.* In that case we ordered OSHA, on remand, to consider solely the feasibility of the standard outside the manufacturing sector, not to reestablish its need. 819 F.2d at 1270. As with the treatment of the notice issue in *USWA I* and *USWA II,* the record on the significant risk issue is unchanged, and this panel is not free to disregard the holdings in those prior opinions of the court.

Petitioners ABC, AGC, and NGFA contend that those opinions did not address their specific contention, that OSHA must make a significant risk determination separately for each industry; in this case, construction and grain processing or storage. We do not interpret the opinions so narrowly. The standard was approved for the manufacturing sector, which has twenty major Standard Industrial Classification (SIC) Code subdivisions. There is no more obvious need for industry specific significant risk determinations for the construction and grain industries than for subdivi-

sions of the manufacturing sector. The holdings in *USWA I* and *USWA II* sustained a general significant risk finding. Assuming, however, that those opinions were construed as leaving open the significant risk issue, as presently presented, the outcome would be no different. This rulemaking proceeding produced a performance-oriented information disclosure standard covering thousands of chemical substances used in numerous industries. For such a standard the significant risk requirement must of necessity be satisfied by a general finding concerning all potentially covered industries. A requirement that the Secretary assess risk to workers and need for disclosure with respect to each substance in each industry would effectively cripple OSHA's performance of the duty imposed on it by 29 U.S.C. § 655(b)(5); a duty to protect all employees, to the maximum extent feasible. We reject, as well, the contention by ABC and AGC that because the construction industry already provides training in hazardous materials handling, there is no significant risk in that industry. At best that argument establishes the existence of risks, and the requirement for maintenance on the jobsite of information on those risks can only make the existing training more effective. As to risks posed by grain dust, the propensity of grain elevators to blow up has been well documented.

## C.

### *The Feasibility Determination*

■ Several petitioners contend that the Secretary's feasibility determination, made after the remand in *USWA II*, is not supported by the rulemaking record. Unlike the notice of rulemaking and significant risk issues, the feasibility determination, outside the manufacturing sector, has not previously been addressed by this court. Our review of that determination asks whether "the Secretary carried out [her] essentially legislative task in a manner reasonable under the state of the record before [her]." *Synthetic Organic Chemical Mfrs. Ass'n v. Brennan,* 503 F.2d 1155, 1158 (3d Cir.1974), *cert. denied,* 420 U.S. 973, 95 S.Ct. 1396, 43 L.Ed.2d 653 (1975) (quoting *Florida Peach Growers Ass'n v. United States Dep't of Labor,* 489 F.2d 120, 129 (5th Cir.1974)).

When OSHA adopts standards relating to activities on the frontiers of scientific knowledge, feasibility issues may be difficult. Here, however, the main components of the hazard communication standard, except for chemical manufacturers, are training of workers and the maintenance of labels and material safety data sheets furnished by chemical manufacturers. These obligations hardly approach the limits of feasibility. The Secretary had, prior to our remand in *USWA I,* already established that the employee training and the maintenance of labels and material safety data sheets is feasible in the manufacturing sector, encompassing a spectrum of SIC Code subdivisions with employers of all sizes. As this court's remand required, the Secretary examined the same rulemaking record, and concluded that it contained no credible evidence that the standard would be technologically or economically infeasible for any industrial sector. That conclusion is on the agency record completely supportable, and we are not permitted to substitute our legislative judgment for that of OSHA. If there are deficiencies in that record they may not be laid at OSHA's door, for as we hold in Part II A above, the affected employers received notice of the rulemaking proceeding.

### D

### *The Unlawful Delegation Contention*

■ One final substantive challenge to the hazard communication standard is advanced on behalf of NGFA, which contends that OSHA unlawfully delegated its rulemaking authority to the American Conference of Governmental Industrial Hygienists (ACGIH) when OSHA incorporated in the standard that organization's Threshold Limit Values for Chemical Substances and

Physical Agents in the Work Environment. ACGIH is an impartial scientific organization which identifies safe exposure levels for various substances.

This court in *USWA I* decided the delegation question when it held, over the objections of the petitioner Public Citizens, and the State of New Jersey as *amicus,* that OSHA need not itself evaluate specific chemical hazards, but could rely on information developed by chemical manufacturers. 763 F.2d at 739. The reliance on ACGIH is an *a fortiori* case, and *USWA I* controls. Even if it did not control, we would in any event reject the unlawful delegation contention. It was appropriate to adopt ACGIH's list as a floor, while imposing on chemical manufacturers the requirement that they research and assess hazards independently. 29 C.F.R. § 1910.1200(d)(3). That action was fully consistent with section 6(b)(5) of the OSH Act, which directs OSHA to set toxic substance standards based on "the best available evidence" with due consideration to "the latest available scientific data."

## III.

None of the substantive or procedural challenges to the application of the hazard communication standard to the construction or grain processing and storage industries have merit. The petitions for review of ABC, AGC, NGFA, and UTC will therefore be denied. The stay of those standards granted by a panel of this court on June 24, 1988, shall be vacated.