[No. A126080. First Dist., Div. Five. Oct. 29, 2010.]

CALIFORNIA CORRECTIONAL PEACE OFFICERS ASSOCIATION et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

Carroll, Burdick & McDonough, Greg McLean Adam, Gonzalo C. Martinez; and Daniel M. Lindsay for Plaintiffs and Appellants.

Kronick, Moskovitz, Tiedemann & Girard, David W. Tyra, Kristianne T. Seargeant, Meredith H. Packer; K. William Curtis, Warren C. Stracener, Linda A. Mayhew and Christopher Thomas for Defendants and Respondents.

## OPINION

**BRUINIERS, J.**—We are asked to determine whether, in the absence of a collective bargaining agreement, Government Code section 19851 mandates the payment of overtime compensation to correctional peace officers who work more than eight hours per day or 40 hours per week.[1] The trial court held that it does not. We agree and affirm the judgment.

---

[1] All further statutory references are to the Government Code unless otherwise specified.

## I. BACKGROUND

Section 19851 generally provides that, unless state employees are subject to a contrary memorandum of understanding (MOU),[2] "It is the policy of the state that the workweek of the state employee shall be 40 hours, and the workday of state employees eight hours, except that workweeks and workdays of a different number of hours may be established in order to meet the varying needs of the different state agencies. It is the policy of the state to avoid the necessity for overtime work whenever possible. This policy does not restrict the extension of regular working-hour schedules on an overtime basis in those activities and agencies where it is necessary to carry on the state business properly during a manpower shortage." (§ 19851, subd. (a).)

Plaintiff/appellant California Correctional Peace Officers Association (CCPOA) is the exclusive recognized employee organization representing approximately 30,000 state employees in State Bargaining Unit Six (Unit Six).[3] Defendant/respondent State of California (State) is the employer, and California's Department of Personnel Administration (DPA), is the Governor's representative and administrator of wages for state employees.[4] In 2007, collective bargaining efforts to negotiate a new MOU failed and an impasse was declared by the state Public Employment Relations Board. Subsequent mediation was also unsuccessful, and on September 18, pursuant

---

[2] "If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if the provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act." (§ 19851, subd. (b).)

[3] Unit Six is made up of employees in multiple correctional peace officer classifications who work for California's Department of Corrections and Rehabilitation (CDCR) and the State Department of Mental Health.

[4] "The Legislature created the DPA in 1981 for the purpose of managing the nonmerit aspects of the state's personnel system. [Citation.] The DPA succeeded to certain powers and duties formerly exercised by the State Personnel Board, the State Board of Control, the Department of General Services, and the Department of Finance. [Citation.] In general, the DPA has jurisdiction over the state's financial relationship with its employees, including matters of salary, layoffs and nondisciplinary demotions. [Citations.] For purposes of collective bargaining the director of the DPA was designated as the Governor's representative to meet and confer with recognized employee organizations under the Ralph C. Dills Act. [Citation.]" (*Tirapelle v. Davis* (1993) 20 Cal.App.4th 1317, 1322–1323 [26 Cal.Rptr.2d 666], fn. omitted.)

"Prior to the enactment of the Dills Act in 1977, state employees' wages, hours and working conditions were determined by numerous provisions of the Government Code." The Ralph C. Dills Act (§ 3512 et seq.) expressly permits the DPA and the state employee unions to supersede certain statutory provisions governing state employees' wages, hours, and working conditions by agreeing to MOU's which conflict with these provisions. (*Department of Personnel Administration v. Superior Court* (1992) 5 Cal.App.4th 155, 175 [6 Cal.Rptr.2d 714].)

to section 3517.8, subdivision (b),[5] the DPA then implemented its last, best, and final offer (LBFO). The LBFO continued the same schedule that was contained in a preceding 2001–2006 MOU—a regular work schedule for most Unit Six employees of up to 164 hours in a 28-day period. Under the LBFO terms, "overtime" for purposes of additional compensation is defined as "any hours worked in excess of one hundred sixty-four (164) hours in a twenty-eight (28) day work period."

■ The LBFO and, as we discuss *post*, three predecessor MOU's, distinguished overtime eligibility between those categories of employees who are "7k exempt" and those who are not. Under the federal Fair Labor Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.), employees are generally permitted to work a maximum of 40 hours per workweek "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." (29 U.S.C. § 207(a)(1).) However, section 207(k) (section 7(k)) of the FLSA provides an exemption for fire protection and law enforcement personnel. (29 U.S.C. § 207(k).) Public agencies do not violate the normal 40-hour overtime standard of the FLSA, with respect to law enforcement personnel (including security personnel in correctional institutions), who do not exceed 171 hours for a work period of 28 days. (29 C.F.R. § 553.230(b) (2010).) For any work in excess of those hours, the employee must be compensated "at a rate not less than one and one-half times the regular rate at which he is employed." (29 U.S.C. § 207(k).)

In 2009, Kurt Stoetzl, a CCPOA member, and the CCPOA filed a first amended complaint seeking injunctive relief and backpay. In their first amended complaint, plaintiffs alleged that Unit Six employees routinely worked eight hours and 12 minutes per day, or a 41-hour workweek. Plaintiffs further alleged that defendants had a statutory obligation, under section 19851, to compensate Unit Six employees for time worked in excess of eight hours per day or 40 hours per week at an overtime rate, and failed to do so.

---

[5] "If the Governor and the recognized employee organization reach an impasse in negotiations for a new memorandum of understanding, the state employer may implement any or all of its last, best, and final offer. Any proposal in the state employer's last, best, and final offer that, if implemented, would conflict with existing statutes or require the expenditure of funds shall be presented to the Legislature for approval and, if approved, shall be controlling without further legislative action, notwithstanding Sections 3517.5, 3517.6, and 3517.7. Implementation of the last, best, and final offer does not relieve the parties of the obligation to bargain in good faith and reach an agreement on a memorandum of understanding if circumstances change, and does not waive rights that the recognized employee organization has under this chapter." (§ 3517.8, subd. (b).)

Defendants answered, denying the allegations and raising a number of affirmative defenses. The parties then filed cross-motions for summary judgment or summary adjudication. CCPOA argued that "Defendants were and are duty-bound, pursuant to . . . section 19851, to pay . . . employees in [Unit Six] . . . premium overtime wages for all hours worked in excess of 8 per day and 40 per week." Defendants argued that "section 19851(a) does not impose a mandatory duty on the State to pay overtime simply because a state employee works more than an 8-hour day or 40-hour week."

In support of their motions, the parties presented evidence of their collective bargaining history. Between 1995 and 1998, CCPOA had no MOU with the state. In 1998, CCPOA and defendants agreed to a one-year MOU. Under that MOU, the parties agreed to operate under the section 7(k) exemption to the FLSA, with the regular work schedule defined as 168 hours in a 28-day work period. The same work schedule was agreed to in a 1999–2001 MOU. The 2001–2006 MOU established a work schedule of 168 hours in a recurring 28-day period up to July 1, 2004, and of 164 hours in a recurring 28-day period following July 1, 2004. Accordingly, overtime was paid only for work exceeding 168 hours in a 28-day period under the first two MOU's, and for work exceeding 164 hours in a 28-day period under the 2001–2006 MOU.[6]

The trial court granted defendants' motion for summary judgment. The order states: "the [c]ourt finds no triable issue of material fact on the sole claim raised by Plaintiffs' [sic] in their First Amended Complaint namely, whether . . . section 19851(a) imposes a mandatory legal duty, under the circumstances of this case, to pay overtime wages. On this issue, the [c]ourt

---

[6] The parties disagree about why the section 7(k) schedule was implemented. According to CCPOA's chief of labor, the work schedule was "designed as a method of achieving salary increases sought by the Union. Never during these negotiations did the State indicate a need to change from a 40-hour schedule to meet its operational needs." According to the CDCR's undersecretary of operations, "[t]he additional 12+/– minutes per workday are operationally necessary for employees working in correctional institutions. To begin with, CDCR requires that designated staff at correctional institutions occupy their posts for a full 8-hour shift. This is to allow for 3 rotating 8-hour shifts at these institutions to ensure appropriate coverage in the institutions. However, these same individuals require a short amount of additional time to perform pre- and post-activities, such as 'donning and doffing' uniforms, checking in and checking out assigned equipment, checking in and checking out on attendance records, and walking from their changing area to their posts. To account for the additional time necessary to complete these tasks, designated staff at correctional institutions are scheduled to a work schedule of 164 hours in a recurring 28-day period as described above. This not only accounts for the additional time involved in the aforementioned tasks, but ensures that CDCR's operational needs of having staff occupy their posts for a full 8-hour shift are still met." Since we are interpreting the statute, and not the MOU, the factual dispute is irrelevant to our decision.

finds in favor of [d]efendants as a matter of law." Accordingly, the court entered judgment in favor of defendants. Plaintiffs filed a timely notice of appeal from the judgment.

## II. Discussion

Plaintiffs contend that section 19851 requires the payment of overtime compensation to designated CCPOA employees who, since September 18, 2007, have been working a 41-hour workweek in the absence of an MOU. Defendants concede that section 19851 generally becomes operative in the absence of an MOU (§ 19851, subd. (b)), but argue that the statute nevertheless does not mandate the payment of overtime wages to Unit Six employees subject to a section 7(k) schedule. Under defendants' interpretation, the Government Code requires compliance only with the FLSA's overtime requirements for Unit Six employees. Specifically, defendants argue: "section 7(k) [of the FLSA] permits public agencies to employ law enforcement personnel, including security personnel, . . . such as [Unit Six] personnel, for up to 171 hours in a 28-day period without incurring overtime liability regardless of the number of hours an employee may work within any given workday or workweek."

Thus, a narrow question, and one apparently of first impression, is presented. Under the California statutory scheme and in the absence of an operative MOU, does section 19851 require the payment of overtime compensation anytime a CCPOA employee works more than eight hours in a day or 40 hours in a week, or do defendants need only demonstrate compliance with the overtime requirements of the FLSA? We conclude that section 19851 does not impose the requirement that plaintiffs urge.

### A. *Standard of Review*

We consider a question of law, which we review de novo. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 [80 Cal.Rptr.2d 66] ["we review the trial court's decision to grant or deny the summary judgment motion de novo"]; *County of Alameda v. Pacific Gas & Electric Co.* (1997) 51 Cal.App.4th 1691, 1698 [60 Cal.Rptr.2d 187] [statutory construction reviewed independently].)

■ "The primary duty of a court when interpreting a statute is to give effect to the intent of the Legislature, so as to effectuate the purpose of the law. [Citation.] To determine intent, courts turn first to the words themselves, giving them their ordinary and generally accepted meaning. [Citation.] If the language permits more than one reasonable interpretation, the court then looks to extrinsic aids, such as the object to be achieved and the evil to be

remedied by the statute, the legislative history, public policy, and the statutory scheme of which the statute is a part. [Citation.] . . . Ultimately, the court must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and it must avoid an interpretation leading to absurd consequences. [Citation.]" (*In re Luke W.* (2001) 88 Cal.App.4th 650, 655 [105 Cal.Rptr.2d 905].) " ' " 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" ' [Citation.]" (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].)

## B. *Plain Language of the Statute*

Although section 19851 was enacted in 1981 and its statutory predecessor (former § 18020) was enacted in 1945, plaintiffs are apparently the first to propose that section 19851 mandates the payment of overtime compensation to any state employee who works in excess of eight hours per day or 40 hours per week, without a collective bargaining agreement. (Stats. 1981, ch. 230, § 55, pp. 1168, 1188–1189; Stats. 1945, ch. 123, § 1, pp. 535–536.) Accordingly, we begin our inquiry with the language of section 19851 itself. As noted above, section 19851 provides in pertinent part that it is "the policy of the state that the workweek of the state employee shall be 40 hours, and the workday of state employees eight hours, except that workweeks and workdays of a different number of hours may be established in order to meet the varying needs of the different state agencies."

We find no plain language in section 19851 mandating that Unit Six employees be paid overtime wages for work in excess of eight hours per day or 40 hours per week.[7] Plaintiffs' argument notwithstanding, the statutory language does not provide in any manner that state employees "shall be paid overtime compensation" for any such work. (§ 19851.) Overtime is only mentioned in the following two sentences: "It is the policy of the state to

---

[7] We need not address the parties' arguments regarding whether, in this case, a workweek and workday "of a different number of hours [was] established in order to meet the varying needs of the different state agencies." (§ 19851, subd. (a).) Whether the 41-hour schedule was established to meet the employer's needs or the employees' is irrelevant. In their motion for summary adjudication, plaintiffs put it best: "Plaintiffs do not contend that section 19851 *prevents* Defendants from scheduling work beyond 8 hours per day, whether for 'agency need' or not. Rather, [p]laintiffs argue that if Defendants *do*—in the absence of a collective bargaining agreement that supersedes section 19851—schedule work hours beyond 8 hours per day or 40 per week, they must compensate such time at a premium overtime rate." The parties agreed with the trial court's framing of the issue below as one of pure statutory construction.

avoid the necessity for overtime work whenever possible. This policy does not restrict the extension of regular working-hour schedules on an overtime basis in those activities and agencies where it is necessary to carry on the state business properly during a manpower shortage." (§ 19851, subd. (a).) But, plaintiffs do not rely on these two sentences to support their argument. And this language does not directly address the question presented here.

 Plaintiffs instead place their reliance on the use of the word "shall" in the first sentence of section 19851, subdivision (a). Pursuant to section 14, " '[s]hall' is mandatory and 'may' is permissive." However, section 19851, subdivision (a), only provides that: "It is the *policy* of the state that *the workweek* of the state employee *shall be 40 hours*, and the workday of state employees eight hours, except that workweeks and workdays of a different number of hours may be established in order to meet the varying needs of the different state agencies." (Italics added.) The statute does not provide, as plaintiffs would have us infer, that state employees *shall* be paid overtime compensation for any work beyond 40 hours in a workweek or eight hours in a day. If the Legislature had so intended, it would have said so. We cannot "under the guise of statutory construction, 'rewrite the law or give the words an effect different from the plain and direct import of the terms used.' [Citation.]" (*City of Pasadena v. AT&T Communications of California, Inc.* (2002) 103 Cal.App.4th 981, 984 [127 Cal.Rptr.2d 276].) Accordingly, we must disagree with plaintiffs' assertion that "the only reasonable interpretation of [s]ection 19851 is that state employees must be compensated at overtime rates when they work beyond [eight] hours in a workday or 40 hours in a workweek without a collective bargaining agreement."[8]

Plaintiffs argue that, in the absence of an MOU, section 19851 supersedes other statutory provisions, and "as a 'supersession' statute, [s]ection 19851 requires DPA to pay overtime at 8 hours per day and 40 hours per week

---

[8] In arguing that an expression of state policy implies a mandatory public duty, plaintiffs rely on cases that are inapposite because they involved very different statutory language. (*Uhl v. Badaracco* (1926) 199 Cal. 270, 282–283 [248 P. 917] ["where persons or the public have an interest in having an act done by a public body '*may*' in a statute means '*must*' "]; see also *Mass v. Board of Education* (1964) 61 Cal.2d 612, 621–623 [39 Cal.Rptr. 739, 394 P.2d 579] [construing former § 13516.5 of the Ed. Code, which provided that past salary *may be paid* to a teacher reinstated by court order]; *Harless v. Carter* (1954) 42 Cal.2d 352, 355–356 [267 P.2d 4] [construing statute providing " '[if] the act or law establishing . . . [a power of public sale] fails to prescribe the time within which such official may act, said official *may sell* at any time prior to the expiration of four years after the due date of said bond . . .' " (italics added)]; *Hollman v. Warren* (1948) 32 Cal.2d 351, 356 [196 P.2d 562] [interpreting statute providing that the governor " 'may' appoint notaries in such number as he deems necessary"]; *Lazan v. County of Riverside* (2006) 140 Cal.App.4th 453, 460 [44 Cal.Rptr.3d 394] [construing statute providing employer " 'shall apply for disability retirement' "].) Section 19851 does not provide that defendants may pay overtime compensation for any hours worked in excess of eight hours per day or 40 hours per week.

unless the parties agree to [a] different work schedule in a collective bargaining agreement." "The Dills Act [(§ 3512 et seq.)] is a 'supersession statute,' designed so that, in the absence of a MOU, as is the case when an existing MOU has expired and the parties have bargained to impasse, numerous Government Code provisions concerning state employees' wages, hours and working conditions take effect." (*Department of Personnel Administration v. Superior Court, supra,* 5 Cal.App.4th at pp. 174–175.) The argument is circular. The supersession language of section 19851 merely provides: "If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if the provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act." (§ 19851, subd. (b); see also § 3517.61[9] ["for state employees in State Bargaining Unit 6, in any case where the provisions of . . . Section . . . 19851 . . . are in conflict with the provisions of a memorandum of understanding, the memorandum of understanding shall be controlling without further legislative action"].) Plaintiffs do not explain how this language necessarily mandates the payment of overtime compensation for any work in excess of eight hours per day or 40 hours per week. It does not. Plaintiffs' argument begs the question of what section 19851, subdivision (a), in fact provides.

■ In our view, the plain language makes clear that section 19851 only establishes a state policy for normal working hours. When we look at the statutory scheme as a whole it is all the more clear that the statute governing overtime compensation is, in fact, not section 19851, but rather section 19844. Section 19844, subdivision (a), provides: *"The department[10] shall provide the extent to which,* and establish the method by which, *ordered overtime or overtime in times of critical emergency is compensated.* The department may provide for cash compensation at a rate not to exceed [one and one-half] times the regular rate of pay, and the rate may vary within a class depending upon the conditions of work, or the department may provide for compensating time off at a rate not to exceed [one and one-half] hours of time off for each hour of overtime worked. The provisions made under this section shall be based on the practices of private industry and other public employment, the needs of state service, and internal relationships." (Italics added.) ■ "It is fundamental that 'the language of a particular code section must be construed in light of and with reference to the language of other sections accompanying it and related to it with a view to harmonizing the several provisions and giving effect to all of them.' [Citation.]" (*Walker v.*

---

[9] Section 3517.61 was enacted in 1998 to authorize and approve the 1998 CCPOA MOU. (Stats. 1998, ch. 820, § 5, pp. 5134–5136.)

[10] " 'Department' means the [DPA]." (§ 19815, subd. (a).)

*Superior Court* (1988) 47 Cal.3d 112, 131 [253 Cal.Rptr. 1, 763 P.2d 852]; accord, *Tesco Controls, Inc. v. Monterey Mechanical Co.* (2004) 124 Cal.App.4th 780, 792 [21 Cal.Rptr.3d 751] [" 'we interpret a statute in context, examining other legislation on the same subject, to determine the Legislature's probable intent' "]; *Smith v. Rhea* (1977) 72 Cal.App.3d 361, 366 [140 Cal.Rptr. 116] ["a specific provision should be construed with reference to the entire statutory system of which it is a part"].)

■ Plaintiffs concede that the Legislature, in section 19844, delegated authority to DPA to provide for overtime compensation. (See also §§ 19843, subd. (a) ["after considering the needs of the state service and prevailing overtime compensation practices, [the DPA] may establish workweek groups of different lengths or of the same length but requiring different methods of recognizing or providing compensation for overtime"], 19849, subd. (a) ["[t]he department shall adopt rules governing hours of work and overtime compensation . . ."].) But, plaintiffs do not claim that any DPA rule entitles Unit Six employees to payment for overtime here. If we were to interpret section 19851 as providing for automatic and mandatory overtime compensation any time a public employee exceeded eight hours of work per day or 40 hours of work per week, we would necessarily render section 19844 superfluous. How could DPA "provide the extent to which" overtime is compensated, if section 19851 already expressed the Legislature's determination that overtime compensation must be provided after eight hours in a day or 40 hours in a week? Accordingly, we cannot read section 19851 as plaintiffs suggest. (See *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 659 [25 Cal.Rptr.2d 109, 863 P.2d 179] ■ [" '[a]n interpretation that renders related provisions nugatory must be avoided . . . ; each sentence must be read not in isolation but in the light of the statutory scheme . . .' " (citations omitted)].)

■ Defendants' interpretation of the statutory scheme is consistent with its plain language. Defendants maintain that "[i]n those special circumstances addressed by the FLSA, section 19845 permits the State to utilize FLSA-authorized methods for paying overtime compensation." Section 19845, subdivision (a), provides: *"Notwithstanding any other provision of this chapter*, the department is authorized to provide for overtime payments as prescribed by the Federal Fair Labor Standards Act to state employees." (Italics added.) Plaintiffs concede that section 19845 constitutes "a delegation of authority from the Legislature to DPA to comply with federal overtime mandates . . . ."[11]

---

[11] Contrary to plaintiffs' implicit assertion, section 19845 does not address " '[s]alary setting.' " Thus, section 19845 does not contravene section 19826, subdivision (b), which provides: "Notwithstanding any other provision of law, the department shall not establish, adjust, or recommend a salary range for any employees in an appropriate unit where an

Plaintiffs argue that section 19845, subdivision (a), does not abrogate section 19851 because the two sections are located in different chapters of the Government Code.[12] But, plaintiffs' argument presumes that section 19851 expressly provides for overtime compensation. As we have concluded, it does not. It is, in fact, sections 19843, 19844, and 19849 that address overtime compensation. And, sections 19843, 19844, and 19849 *are* found in the same chapter as section 19845.

■ Plaintiffs do not contend that section 7(k) of the FLSA does not apply to Unit Six employees. (See 29 C.F.R. § 553.211(f) (2010).) Nor do plaintiffs contend that the current schedule violates section 7(k) of the FLSA. The question is not whether the FLSA preempts California overtime law for public employees. It is settled that the FLSA does not preempt state regulation of wages, hours, and working conditions. (29 U.S.C. § 218(a); *City of Sacramento v. Public Employees Retirement System* (1991) 229 Cal.App.3d 1470, 1482 [280 Cal.Rptr. 847]; *Rivera v. Division of Industrial Welfare* (1968) 265 Cal.App.2d 576, 602–605 [71 Cal.Rptr. 739].) Plaintiffs have failed to show, however, that California law in section 19851 sets a lower threshold for overtime payments to law enforcement personnel than that provided under the FLSA.

■ Contrary to plaintiffs' contention, section 19851.1 does not provide support for their interpretation of section 19851. Section 19851.1, subdivision (a)(1), provides: "Notwithstanding Section 19851, the Department of Corrections shall establish a standardized overtime cap for correctional officers not to exceed 80 hours per month." Section 19851.1 only provides for an overtime cap. It says nothing about the overtime trigger. The overtime cap in section 19851.1 serves the same purpose regardless of whether overtime pay is triggered after eight hours in a day, 40 hours in a week, or 171 hours in 28 days. Section 19851.1 merely limits the maximum amount of overtime compensation that a correctional officer can earn, regardless of when such overtime compensation is triggered. Similarly, section 19852 is not rendered "surplusage" under defendants' interpretation of section 19851, as plaintiffs argue. Section 19852 provides: "When the Governor determines that the best interests of the state would be served thereby, the Governor may require that the 40-hour workweek established *as the state policy* in Section 19851 shall be worked in four days in any state agency or part thereof." (Italics added.) Again, section 19852 says nothing on the topic of overtime compensation.

employee organization has been chosen as the exclusive representative pursuant to Section 3520.5." Accordingly, plaintiffs misplace their reliance on *Tirapelle v. Davis, supra,* 20 Cal.App.4th at page 1325 and footnote 10.

[12] Plaintiffs did not raise this argument before the trial court. Nonetheless, we exercise our discretion to address this issue of law (and defendants' responsive argument). (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 23–24 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

A fundamental flaw of plaintiffs' arguments is that they presume that there must be a trigger for overtime compensation under state law that is more protective of public employees than what is provided by the FLSA. However, plaintiffs provide no authority for this underlying premise and we know of none. Plaintiffs seem to rely on a general assumption that any work in excess of eight hours per day or 40 hours per week constitutes "overtime," automatically triggering a requirement for additional compensation. With respect to *private sector* employees, overtime compensation is regulated by various Industrial Welfare Commission wage and hour orders and Labor Code section 510. Labor Code section 510, subdivision (a), provides in relevant part: "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." However, state and local government employees are exempted from the overtime rules applicable to private sector employees. (Cal. Code Regs., tit. 8, § 11010 et seq.; Lab. Code, § 510; *Johnson v. Arvin-Edison Water Storage Dist.* (2009) 174 Cal.App.4th 729, 733 [95 Cal.Rptr.3d 53] ["unless Labor Code provisions are specifically made applicable to public employers, they only apply to employers in the private sector"].)

We conclude that the plain language of section 19851 does not require payment of overtime compensation anytime a Unit Six employee works in excess of eight hours per day or 40 hours per week.[13]

C. *Legislative History*

Plaintiffs contend that the legislative history supports the interpretation of section 19851 that they urge. We do not believe that it is necessary for us to resort to legislative history in interpreting this statute. When "legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive; 'no resort to extrinsic aids is necessary or proper.' [Citation.]" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61 [124 Cal.Rptr.2d 507, 52 P.3d 685].) In any event, our conclusion is not altered by our review of the legislative history. Even if the plain language of the statutory scheme did not decide the issue, the legislative history does not support plaintiffs' arguments.

Plaintiffs contend that section 19851 was intended to provide for mandatory payment of overtime wages because former section "18020 and [section]

---

[13] On October 7, 2010, plaintiffs sought to file a supplemental letter brief asserting that we should consider the recent decision of our Supreme Court in *Professional Engineers in California Government v. Schwarzenegger* (2010) 50 Cal.4th 989 [116 Cal.Rptr.3d 480, 239 P.3d 1186], which also addressed section 19851. We denied that request.

19851 were the only existing overtime protections for state employees when they were enacted (in 1945 and 1981, respectively) because the FLSA did not yet apply to the States."[14] This argument is contradicted by the very legislative history materials on which they rely.

When the predecessor to section 19851 (former § 18020) was first enacted, it provided: "For the purpose of determining eligibility for overtime compensation, the State Personnel Board shall establish the normal work week for each class in the State civil service for which a monthly salary range is fixed and for each position not subject to State civil service by allocating, and reallocating as the needs of the service require, each State civil service class and each exempt position to one of the following groups: [¶] (1) Classes with a normal work week of 40 hours. [¶] (2) Classes with a normal work week of 44 hours. [¶] (3) Classes with a normal work week of 48 hours. [¶] (4) Classes which [cannot] be included in any plan of payment for overtime because: [¶] (a) While requiring at least 40 hours a week, the duties and responsibilities are such that they are not adapted to a maximum number of hours a week; or [¶] (b) The performance of duties is required on a part-time or intermittent basis and does not amount to a maximum of 40 hours per week." (Stats. 1945, ch. 123, § 1, pp. 535, 536.) Unlike the current statute, former section 18021 went on to state "Every State employee compensated on a monthly basis required and ordered to work in excess of a normal work week as established by the State Personnel Board for his class or for his position, if exempt, *shall receive overtime compensation for all such overtime.*" (Italics added.) (Stats. 1945, ch. 123, § 1, pp. 535, 536.) Thus, contrary to plaintiffs' argument, when first enacted former section 18020 provided for the establishment of normal workweek classes, whereas former section 18021 expressly provided for overtime compensation. Former section 18020 was later amended, in 1955 and 1974, to more closely resemble the language currently found in section 19851. (Stats. 1974, ch. 1368, § 2, pp. 2962–2963;

---

[14] When the FLSA was enacted in 1938, its wage and overtime provisions did not apply to employees of state and local governments. (*Garcia v. San Antonio Metro. Transit Auth.* (1985) 469 U.S. 528, 533 [83 L.Ed.2d 1016, 105 S.Ct. 1005].) In 1974, Congress extended FLSA coverage to virtually all state and local government employees. (*Garcia,* at p. 533.) Between 1976 and 1986, however, state employers were relieved of overtime obligations under the FLSA. (See *National League of Cities v. Usery* (1976) 426 U.S. 833, 852 [49 L.Ed.2d 245, 96 S.Ct. 2465] [holding that "insofar as the [FLSA] operate[s] to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions, they are not within the authority granted Congress by Art. I, § 8, cl. 3" (fn. omitted)]; *Garcia v. San Antonio Metro. Transit Auth., supra,* 469 U.S. at pp. 555–557 [overruling *National League of Cities* and holding that "Congress' action in affording [public transit] employees the protections of the wage and hour provisions of the FLSA contravened no affirmative limit on Congress' power under the Commerce Clause"].) In response to the *Garcia* decision, Congress passed the Fair Labor Standards Amendments of 1985 (Pub.L. No. 99-150 (Nov. 13, 1985) 99 Stat. 787), which delayed the application of the FLSA to state and local governments until April 1986.

Stats. 1955, ch. 1787, § 1, pp. 3295–3296.) The predecessor of section 19844, former section 18021.5, was also added in 1955. (Stats. 1955, ch. 1787, § 3, p. 3296.) Thus, the legislative history is consistent with our interpretation of the statute's plain language—that section 19851 does not address the payment of overtime compensation.

■■■ Our reading of section 19851 does not, as plaintiffs suggest, "eradicate overtime protection for state workers," since the provisions of the FLSA provide such protection. (See fn. 14, *ante*.) Rather, plaintiffs have simply failed to show that the Legislature intended that state law mandate, at least in this context, a lower overtime threshold than that provided by the FLSA. Accordingly, the trial court properly granted summary judgment to defendants.

## III. Disposition

The judgment is affirmed.

Jones, P. J., and Needham, J., concurred.

A petition for a rehearing was denied November 19, 2010, and appellants' petition for review by the Supreme Court was denied February 2, 2011, S188813. Werdegar, J., did not participate therein.