[No. A125493. First Dist., Div. One. June 6, 2011.]

CALIFORNIA CHAMBER OF COMMERCE, Plaintiff and Appellant, v. EDMUND G. BROWN, Jr., as Governor, etc., et al., Defendants and Respondents.

236

COUNSEL

Morrison & Foerster, Michèle B. Corash, Miriam A. Vogel and Robin Stafford for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Ken Alex, Assistant Attorney General, and Susan S. Fiering, Deputy Attorney General, for Defendants and Respondents.

Altshuler Berzon, Stephen P. Berzon, Jonathan D. Weissglass, Danielle E. Leonard; Coughlin Stoia Geller Rudman & Robbins and Pamela M. Parker for Sierra Club et al. as Amici Curiae on behalf of Defendants and Respondents.

Michael E. Wall and Avinash Kar for Natural Resources Defense Council as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

BANKE, J.—

## I.  INTRODUCTION

In November 1986, California voters approved Proposition 65, an initiative that enacted the Safe Drinking Water and Toxic Enforcement Act of 1986, now set forth in Health and Safety Code section 25249.5 et seq. (Proposition 65).[1] A key provision of Proposition 65 is its mandate that the Governor publish "a list of those chemicals known to the state to cause cancer or reproductive toxicity." (§ 25249.8, subd. (a).) This list is "to be revised and republished in light of additional knowledge at least once per year" (*ibid.*) and is commonly referred to as the "Proposition 65 list."

This case concerns the methods by which the list can be updated, and specifically whether the Office of Environmental Health Hazard Assessment (OEHHA) can add chemicals to the list by use of a methodology set forth in subdivision (a) of section 25249.8. The California Chamber of Commerce (CalChamber) contends this listing method is no longer operable and applied only to the creation of the initial Proposition 65 list. It asserts further changes to the list must be made using one of the three methods set forth in subdivision (b) of section 25249.8. The trial court concluded the language of section 25249.8 is unambiguous and the listing method set forth in subdivision (a) remains operable. While we do not agree the statutory language is, in all respects, unambiguous, we agree the Proposition 65 list not only can, but must, be updated by the· method used here by the OEHHA and set forth in subdivision (a) of section 25249.8. We therefore affirm the judgment.

## II.  BACKGROUND

### A.  *Proposition 65*

Proposition 65 imposes two significant requirements on businesses. First, it prohibits businesses from discharging into drinking water sources any chemical "known to the state to cause cancer or reproductive toxicity" (the

---

[1] Undesignated statutory references are to the Health and Safety Code.

discharge prohibition). (§ 25249.5.) Second, it requires businesses to provide a public warning if they "knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity" (the warning requirement). (§ 25249.6.) The warning requirement applies to any exposure, and thus includes exposures in the workplace, service and retail, and recreational environments. (Health & Saf. Code, § 25249.6; Cal. Code Regs., tit. 27, §§ 25602–25605.2.) A business that violates the discharge prohibition or warning requirement can be sued in a public or private enforcement action and is subject to injunctive relief and civil penalties. (§ 25249.7, subds. (a), (b).)

The discharge prohibition and warning requirement are triggered by the inclusion of a chemical on the Proposition 65 list of "chemicals known to the state to cause cancer or reproductive toxicity."[2] (§ 25249.8.) Thus, the methods by which a chemical is placed on the list are among the pivotal features of Proposition 65.

Section 25249.8 addresses the content of the Proposition 65 list, and does so principally in two subdivisions. Subdivision (a) provides: "On or before March 1, 1987, the Governor shall cause to be published a list of those chemicals known to the state to cause cancer or reproductive toxicity within the meaning of this chapter, and he shall cause such list to be revised and republished in light of additional knowledge at least once per year thereafter. Such list shall include at a minimum those substances identified by reference in Labor Code Section 6382(b)(1) and those substances identified additionally by reference in Labor Code Section 6382(d)."[3] (§ 25249.8, subd. (a).)

Subdivision (b) provides: "A chemical is known to the state to cause cancer or reproductive toxicity within the meaning of this chapter if in the opinion of the state's qualified experts it has been clearly shown through scientifically valid testing according to generally accepted principles to cause cancer or reproductive toxicity, or if a body considered to be authoritative by such experts has formally identified it as causing cancer or reproductive toxicity, or if an agency of the state or federal government has formally

---

[2] A business can obtain an exemption from the discharge prohibition and warning requirement by proving the particular discharge or exposure for which it is responsible is below a certain threshold level that does not pose a significant risk of cancer or reproductive toxicity. (§§ 25249.9, 25249.10.) Given the expense of making such a showing, however, the exemption provisions are of little practical consequence. (See *DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 191 [62 Cal.Rptr.3d 722] [recognizing "onerous" burden of proving an exemption and the costs associated with decision to, instead, forego use of a potentially beneficial product].)

[3] We use this method, which we call the "Labor Code reference method," and other listing method descriptors in the remainder of this opinion for ease of reference.

required it to be labeled or identified as causing cancer or reproductive toxicity."[4] (§ 25249.8, subd. (b).)

This lawsuit primarily concerns whether the "Labor Code reference method" set forth in section 25249.8. subdivision (a) continues to be a method by which chemicals are listed, or whether this method provided the content of only the initial Proposition 65 list. CalChamber advocates the latter and asserts the three methods provided by subdivision (b)—the "Expert Review," "Authoritative Body," and "Formally Required to be Labeled" methods—are the means by which chemicals can now be added to the list.

B.   *Labor Code Section 6382, Subdivisions (b)(1) and (d)*

The Labor Code reference method set forth in subdivision (a) of section 25249.8, provides in pertinent part: "Such list shall include at a minimum those substances identified by reference in Labor Code Section 6382(b)(1) and those substances identified additionally by reference in Labor Code Section 6382(d)." (§ 25249.8, subd. (a).)

Labor Code section 6382 is part of the Hazardous Substances Information and Training Act (HSITA) (Lab. Code, § 6360 et seq.) and sets forth criteria for the preparation and amendment of a list of "hazardous substances" in the workplace (*id.*, § 6380), known as the "HSITA list." (*Id.*, § 6380.) The legislative findings supporting the enactment of HSITA included that exposure to hazardous substances in the workplace posed serious health hazards to employees and the "right and . . . need to know" about these hazards were necessary to reduce "the incidence and cost of occupational disease." (*Id.*, § 6361, subd. (a)(2).) Accordingly, one of HSITA's primary purposes is to "ensure the transmission of necessary information to employees regarding the properties and potential hazards of hazardous substances in the workplace." (*Id.*, § 6361, subd. (b).)

Subdivision (a) of Labor Code section 6382 states any substance identified in any source listed in subdivision (b) is presumed to be "potentially

---

[4] Additional subdivisions provide:

"(c) On or before January 1, 1989, and at least once per year thereafter, the Governor shall cause to be published a separate list of those chemicals that at the time of publication are required by state or federal law to have been tested for potential to cause cancer or reproductive toxicity but that the state's qualified experts have not found to have been adequately tested as required.

"(d) The Governor shall identify and consult with the state's qualified experts as necessary to carry out his duties under this section.

"(e) In carrying out the duties of the Governor under this section, the Governor and his designates shall not be considered to be adopting or amending a regulation within the meaning of the Administrative Procedure Act as defined in Government Code Section 11370." (§ 25249.8, subds. (c)-(e).)

hazardous." (Lab. Code, § 6382, subd. (a).) Labor Code section 6382, subdivision (b)(1)—expressly referenced in Proposition 65's Labor Code reference method (Health & Saf. Code, § 25249.8, subd. (a))—identifies "[s]ubstances listed as human or animal carcinogens by the International Agency for Research on Cancer" (IARC). (Lab. Code, § 6382, subd. (b)(1).)

Subdivision (d) of Labor Code section 6382—also expressly referenced in Proposition 65's Labor Code reference method (Health & Saf. Code, § 25249.8, subd. (a))—states "in addition to those substances on the director's list of hazardous substances, any substance within the scope of the federal Hazard Communication Standard (29 CFR Sec. 1910.1200) is a hazardous substance subject to this chapter." (Lab. Code, § 6382, subd. (d).)

Thus, Proposition 65's Labor Code reference method embraces "[s]ubstances listed as human or animal carcinogens by the [IARC]" (Lab. Code, § 6382, subd. (b)(1)) and "any substance within the scope of the federal Hazard Communication Standard (29 C.F.R. Sec. 1910.1200)" (Lab. Code, § 6382, subd. (d)).

C. *The Federal Hazard Communication Standard*

The federal Hazard Communication Standard (HCS) referenced in Labor Code section 6382, subdivision (d), was created in 1983, pursuant to title 29 United States Code section 655. That federal statute authorized the Department of Labor, through the Occupational Safety and Health Administration (OSHA), to promulgate "a final occupational safety and health standard entitled 'Hazard Communication' (29 CFR § 1910.1200)." (48 Fed.Reg. 53280 (Nov. 25, 1983).)

The purpose of the HCS is "to ensure that the hazards of all chemicals produced or imported are evaluated, and that information concerning their hazards is transmitted to employers and employees." (29 C.F.R. § 1910.1200(a) (2010).) This information is transmitted by "means of comprehensive hazard communication programs" which include, among other things, "container labeling and other forms of warning." (*Ibid.*)

Health "hazards" under the federal HCS include more than "chemicals known to the state to cause cancer or reproductive toxicity" included in the Proposition 65 list, but do include "carcinogens" and "reproductive toxins." (29 C.F.R. § 1910.1200(c) (2010).) Instead of attempting to identify every hazardous chemical by creation of a single list of hazardous substances, the HCS requires manufacturers, importers and employers to evaluate chemicals they produce, import or utilize to determine if the chemicals are hazardous and the particular hazards they pose. (29 C.F.R. § 1910.1200(d)(1) (2010);

see also 48 Fed.Reg. 53280, 53296 (Nov. 25, 1983) ["The Agency determined that the most comprehensive approach would be to require evaluation of all chemicals, not some pre-selected list of substances . . . ."].)

Two provisions of the HCS, however, *require* a manufacturer, importer or employer to treat a chemical as hazardous if it is identified as such by certain sources. Title 29 Code of Federal Regulations part 1910.1200(d)(3) (2010) provides in pertinent part: "[C]hemical manufacturer[s], importer[s] or employer[s] evaluating chemicals shall treat the following sources as establishing that the chemicals listed in them are hazardous: [¶] (i) 29 CFR part 1910, subpart Z, Toxic and Hazardous Substances, Occupational Safety and Health Administration (OSHA); or, [¶] (ii) Threshold Limit Values for Chemical Substances and Physical Agents in the Work Environment, American Conference of Governmental Industrial Hygienists (ACGIH) (latest edition) . . . ." (29 C.F.R. § 1910.1200(d)(3) (2010), italics omitted.) Subpart (d)(4) provides those evaluating chemicals shall treat the following sources as establishing the chemical "is a carcinogen or potential carcinogen for hazard communication purposes: [¶] (i) National Toxicology Program (NTP), *Annual Report on Carcinogens* (latest edition); [¶] (ii) [IARC] *Monographs* (latest editions); or [¶] (iii) 29 CFR part 1910, subpart Z, Toxic and Hazardous Substances Occupational Safety and Health Administration." (29 C.F.R. § 1910.1200(d)(4) (2010).)

The sources identified in title 29 Code of Federal Regulations part 1910.1200(d)(3) and (4) (2010), were adopted as part of the HCS to establish a "floor," so that certain chemicals, at a minimum, would be treated as hazardous by all evaluators. (48 Fed.Reg. 53280, 53298–53299 (Nov. 25, 1983).)

D. *The Initial Proposition 65 List and the* Deukmejian *Decision*

On February 27, 1987, OEHHA published the initial Proposition 65 list.[5] OEHHA utilized the Labor Code reference method set forth in section 25249.8, subdivision (a), but listed only chemicals that had been identified as carcinogens or reproductive toxins based on human epidemiological studies. (*AFL-CIO v. Deukmejian* (1989) 212 Cal.App.3d 425, 432, 434 [260 Cal.Rptr. 479] (*Deukmejian*).) It did not include chemicals identified as carcinogens or reproductive toxins based on animal studies. OEHHA placed these chemicals on a "candidate list," which it referred to the newly appointed "state's qualified experts" panel to evaluate. (*Id.* at pp. 432–433.)

A citizens' group sued to require the Governor to list chemicals known to be carcinogens or reproductive toxins to animals, as well as to humans. (See

[5] OEHHA is the lead agency designated by the Governor to implement and enforce Proposition 65. (Health & Saf. Code, § 25249.12, subd. (a); Cal. Code Regs., tit. 27, § 25102, subd. (*o*).)

*Deukmejian, supra*, 212 Cal.App.3d at p. 429.) Governor Deukmejian conceded "section 25249.8 imposes a ministerial duty to publish the initial [Proposition 65] list," but asserted he had discretion to choose which chemicals identified by reference to Labor Code section 6382, subdivisions (b)(1) and (d), should be listed without further scientific review and which should be referred to the panel of qualified experts. (*Deukmejian*, at pp. 432, 440.)

The Court of Appeal disagreed. "[T]he provisions of section 25249.8, subdivision (a), admit of no such discretion. The section uses words classically defined as imposing a mandatory duty: 'Such list *shall include at a minimum* those substances identified by reference in Labor Code Section 6382(b)(1) and those substances identified additionally by reference in Labor Code Section 6382(d).' " (*Deukmejian, supra*, 212 Cal.App.3d at p. 440.) Therefore, "[d]efendant had no discretion to exclude from the initial list known carcinogenic and reproductive toxins referred to in Labor Code section 6382."[6] (212 Cal.App.3d at p. 440.)

The court recognized, however, the federal HCS (referred to in Lab. Code, § 6382, subd. (d)) "includes thousands of substances that are not carcinogens or reproductive toxins . . . ." (*Deukmejian, supra*, 212 Cal.App.3d at p. 438.) Therefore, "the initial [Proposition 65] list, and subsequent lists published thereafter, need not include all substances listed under HCS but only known carcinogens and reproductive toxins . . . ." (*Ibid.*)

In rejecting the Governor's assertion that he had discretion with regard to the listing of chemicals identified pursuant to the Labor Code reference method, the court also rejected his argument that subdivision (b) of section 25249.8 sets forth the only methods by which a chemical can be identified as "known to the state to cause cancer or reproductive toxicity." (*Deukmejian, supra*, 212 Cal.App.3d at pp. 439–440, italics omitted.) The court stated: "[S]ection 25249.8, subdivision (a) sets forth the minimum definition of those chemicals *known to the state* to cause cancer or reproductive toxicity which is to include the known human and animal carcinogens referred to in the Labor Code. With regard to the minimum content of the initial list, this mandate is etched in stone. [¶] Proposition 65 was not intended to produce a one-time list of known carcinogenic chemicals, but rather requires revision of the initial list annually or even more frequently. (§ 25249.8, subd. (a).) Section

---

[6] The court also explained Labor Code section 6382, subdivisions (b)(1) and (d), are part of "California and Federal OSHA" which are statutory and regulatory schemes "designed to protect humans in the workplace. Yet these regulatory schemes expressly impose controls on chemicals carcinogenic both to humans and animals. . . . Proposition 65 is in pari materia and therefore must be read in harmony with these regulatory schemes." (*Deukmejian, supra*, 212 Cal.App.3d at p. 438, fn. 7, italics & citations omitted.)

25249.8, subdivision (a), insures the minimum content of the initial list, and section 25249.8, subdivision (b), directs both defendant and the Panel to engage in a diligent, thorough and continuing search for additional chemicals which evolving scientific knowledge demonstrates are subject to [Proposition 65]. Viewed in this light, the provisions of section 25249.8, subdivisions (a) and (b) are not inconsistent, but complementary." (*Id.* at p. 440.) The methods of identifying chemicals "known to the state to cause cancer" described in "subdivision (b) [are] supplemental to subdivision (a)." (*Id.* at p. 439.)

E. *Revisions to the Proposition 65 List Under Subdivision (b) Listing Methods*

In accordance with the *Deukmejian* decision, OEHHA added to the Proposition 65 list the content required under subdivision (a) of section 25249.8, i.e., those chemicals identified by the Labor Code reference method without regard to whether the chemicals had been identified as human or animal carcinogens or reproductive toxins.

OEHHA then devoted its resources to revising the Proposition 65 list in accordance with the methods set forth in subdivision (b) of section 25249.8, i.e., the Expert Review, Authoritative Body, and Formally Required to be Labeled methods. (§ 25249.8, subd. (b).) OEHHA issued publications explaining and describing these as "three mechanisms by which carcinogens and reproductive toxins are listed."

The Expert Review method is the only listing method requiring extensive scientific review and analysis by the state's qualified experts. Regulations define the term "state's qualified experts" to mean the Carcinogen Identification Committee and the Developmental and Reproductive Toxicant Identification Committee, both of which are committees of the OEHHA Science Advisory Board. (Cal. Code Regs., tit. 27, § 25102, subds. (c), (t).) These two committees advise and assist the Governor and Director of OEHHA in the implementation of section 25249.8 by issuing opinions as to whether a chemical has been clearly shown to cause cancer or reproductive toxicity. (Cal. Code Regs., tit. 27, §§ 25102, subds. (c), (t), 25302, subds. (a), (b).)

Under the Authoritative Body method, the expert committees identify bodies they consider to have expertise in the identification of chemicals causing cancer or reproductive toxicity. (Cal. Code Regs., tit. 27, § 25306, subd. (b).)[7] It is then OEHHA's responsibility to determine whether any of

---

[7] To date, designated authoritative bodies are: IARC, National Institute for Occupational Safety and Health, National Toxicology Program (NTP), United States Environmental Protection Agency (EPA) and United States Food and Drug Administration (FDA). (Cal. Code Regs., tit. 27, § 25306, subds. (*l*), (m).)

the designated authoritative bodies have identified a chemical as causing cancer or reproductive toxicity by including it on a list, in a published report, or other final document. (Cal. Code Regs., tit. 27, § 25306, subd. (c).) OEHHA must further determine whether the authoritative body relied upon "sufficient evidence" of carcinogenicity or reproductive toxicity as defined in the regulations or did not consider "scientifically valid" data, but it does not "substitute its scientific judgment for that of the authoritative body." (*Exxon Mobil Corp. v. Office of Environmental Health Hazard Assessment* (2009) 169 Cal.App.4th 1264, 1282–1283 [87 Cal.Rptr.3d 580], italics omitted (*Exxon Mobil*); see Cal. Code Regs., tit. 27, § 25306, subds. (e)–(g).) OEHHA refers a chemical to the expert committees for evaluation only if it finds "no substantial evidence" that the authoritative body's identification of a chemical as a carcinogen or reproductive toxin meets the regulatory criteria. (Cal. Code Regs., tit. 27, § 25306, subd. (i).)

The Formally Required to be Labeled method involves no independent evaluation by OEHHA or the expert committees. Rather, OEHHA "shall" list chemicals "if . . . [it] determines that an agency of the state or federal government has formally required the chemical to be labeled or identified as causing cancer or reproductive toxicity." (Cal. Code Regs., tit. 27, § 25902, subd. (a).)

F.  *Revisions to the Proposition 65 List Under the Subdivision (a) Listing Method*

Fifteen years after Proposition 65 was enacted, OEHHA for the first time revised the Proposition 65 list pursuant to the Labor Code reference method set forth in subdivision (a) of section 25249.8. In April 2001, OEHHA notified all interested parties it had "de-listed" sodium saccharin. OEHHA explained that in 1989, "[s]accharin was identified by IARC and NTP as causing cancer" and it therefore had added saccharin to the Proposition 65 list as a "result of the issuance of a judicial decision [(*Deukmejian*)]" interpreting and enforcing the Labor Code reference method. However, further scientific research resulted in a changed assessment. In 1999, IARC published a monograph finding "saccharin and its salts . . . 'not classifiable as to their carcinogenicity to humans' " and concluding the evidence in " 'experimental animals for the carcinogenicity of saccharin (acid form)' " is "inadequate." In 2000, NTP released its ninth report on carcinogens and removed saccharin from its "list of substances 'reasonably anticipated to be a human carcinogen.' " OEHHA therefore removed saccharin sodium from the Proposition 65 list and received no objections to its doing so.

Two years later, in 2003, OEHHA gave notice it intended to broaden its original listing of "certain nickel compounds" to include "all nickel compounds" based upon a 2002 NTP report and a 1990 IARC monograph

identifying nickel compounds as carcinogens. This time OEHHA received objections that "references to chemicals designated under [Labor Code] Section[] 6382(b)(1) and (d)" defined only the minimum content of the initial Proposition 65 list. (Italics omitted.) OEHHA responded that section 25249.8, subdivision (a), requires the list to always include, at a minimum, those chemicals identified by reference to Labor Code section 6382, subdivisions (b)(1) and (d). "As the substances identified by . . . [reference to Labor Code section 6382, subdivisions (b)(1) and (d)] change the Proposition 65 list must change, in accordance with the requirement of Health and Safety Code Section 25249.8(a) that the Governor revise and republish at least once per year the list of chemicals known to the State to cause cancer or reproductive toxicity."

Again in July 2004, and three times in 2005, OEHHA used the Labor Code reference method to add several more identified carcinogens in recent IARC monographs or NTP reports.

In February 2006, OEHHA used the Labor Code reference method to add "areca nut" and "betel quid without tobacco" as known carcinogens based upon a 2004 IARC monograph. OEHHA again received objections that the Labor Code reference method applied only to the initial Proposition 65 list. In December 2006, OEHHA used the Labor Code reference method to delist several chemicals. It received no objections to these actions.

The following year, in June 2007, OEHHA invoked the Labor Code reference method in a proposal to list several chemicals as known reproductive toxins. OEHHA explained: "Health and Safety Code section 25249.8(a) further requires that substances identified in Labor Code section 6382(d) as causing reproductive toxicity be included on the Proposition 65 list. Labor Code section 6382(d) captures any chemicals within the scope of the federal [HCS] that are identified as reproductive toxicants. Chemicals fall within the scope of the [HCS] if they are listed as hazardous in the latest edition of the [American Conference of Governmental Industrial Hygenists (ACGIH)] 'Threshold Limit Values (TLVs).' The TLVs for hexafluoroacetone (male endpoint), nitrous oxide (developmental endpoint) and vinyl cyclohexene dioxide (male and female endpoints) were assigned on the basis of ACGIH's findings of reproductive effects." Effective August 1, 2008, OEHHA added these three chemicals to the Proposition 65 list.

G. *The Current Litigation*

On November 21, 2008, CalChamber filed a petition for a writ of mandate and complaint for declaratory relief in the San Diego County Superior Court.[8] CalChamber alleged OEHHA had exceeded its authority under section 25249.8 by using the Labor Code reference method to add chemicals to the Proposition 65 list that were not included in the "initial Proposition [65] list following final judgment in *AFL-CIO v. Deukmejian*, [*supra*,] 212 Cal.App.3d 425 . . . ." CalChamber sought a declaration that (1) "the mandatory duty to include Labor Code Chemicals . . . set forth in section 25249.8(a) applied only to the Initial [Proposition 65] List" finalized and required to be published by March 1, 1987 and (2) "any future action . . . to automatically add Labor Code Chemicals to the Proposition 65 List as carcinogens or reproductive toxicants" exceeds OEHHA's authority. CalChamber sought a writ of mandate directing OEHHA to remove any chemicals it had added to any revised Proposition 65 list using the Labor Code reference method, and an order enjoining OEHHA from adding any more chemicals to the list except pursuant to one of the listing methods set forth in subdivision (b) of section 25249.8.

On January 26, 2009, the San Diego court granted OEHHA's motion to transfer CalChamber's action to Alameda County and consolidate it with a case that had been filed by the Sierra Club and other environmental and labor organizations (*Sierra Club v. Schwarzenegger* (2009, No. RG07356881)) for the purpose of trying common issues concerning the interpretation of section 25249.8.[9]

CalChamber and OEHHA filed cross-motions for judgment on the pleadings, accompanied by requests for judicial notice. The trial court granted the requests, denied CalChamber's motion, and ruled in favor of OEHHA on the issues raised by the cross-motions. It did not enter judgment, however, but allowed CalChamber to file an amended complaint and writ petition challenging the inclusion of chemicals from Threshold Limit Values for Chemical Substances and Physical Agents in the Work Environment, compiled by the American Conference of Governmental Industrial Hygenists (ACGIH) (ACGIH list) as part of the Labor Code reference method set forth in subdivision (a) of section 25249.8. CalChamber and OEHHA filed further cross-motions for judgment on the pleadings. The trial court denied

---

[8] CalChamber named as defendants the Governor of California, the Secretary of the California Environmental Protection Agency and the Director of OEHHA.

[9] In the Sierra Club case, OEHHA conceded it has a mandatory duty to revise the Proposition 65 list in accordance with the Labor Code reference method, and the dispute is whether OEHHA has violated that duty by delaying or failing to list certain alleged carcinogens and reproductive toxins.

CalChamber's motion, granted OEHHA's motion, and entered judgment against CalChamber on all causes of action alleged in its first amended complaint and writ petition. This appeal by CalChamber followed.[10]

## III. Discussion

CalChamber raises two issues on appeal: (1) Can OEHHA use the Labor Code reference method set forth in Health and Safety Code section 25249.8, subdivision (a), in annually revising and republishing the Proposition 65 list and (2) if OEHHA can do so, do chemicals identified by reference to Labor Code section 6382, subdivision (d), include chemicals identified on the ACGIH list?

We review these questions of statutory construction de novo.[11] (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724 [90 Cal.Rptr.3d 889, 248 P.3d 1185]; *California Correctional Peace Officers Assn. v. State of California* (2010) 189 Cal.App.4th 849, 856 [117 Cal.Rptr.3d 109].)

█ The principles that guide us in interpreting Proposition 65, and specifically section 25249.8, are well established. " 'In interpreting a voter initiative . . . , we apply the same principles that govern statutory construction. (See *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 [87 Cal.Rptr.2d 222, 980 P.2d 927] (*Horwich*).) Thus, [1] "we turn first to the language of the statute, giving the words their ordinary meaning." (*People v. Birkett* (1999) 21 Cal.4th 226, 231 [87 Cal.Rptr.2d 205, 980 P.2d 912] (*Birkett*).) [2] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. (*Horwich, supra*, 21 Cal.4th at [p]p. 276, [280].) [3] When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." (*Birkett, supra*, 21 Cal.4th at p. 243.)' (*People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27] . . . .)" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900–901 [135 Cal.Rptr.2d 30, 69 P.3d

---

[10] The plaintiffs in the Sierra Club case are not parties to this appeal. They have, however, filed an amici curiae brief.

[11] While the standard of judicial review in a traditional mandamus proceeding, in the trial court and on appeal, is often stated as being whether the governmental agency "abused its discretion," i.e., by not proceeding in the manner required by law, making a decision that is not supported by the agency's findings, or failing to follow proper procedures (see *Exxon Mobil, supra*, 169 Cal.App.4th at p. 1276; *SN Sands Corp. v. City and County of San Francisco* (2008) 167 Cal.App.4th 185, 191 [83 Cal.Rptr.3d 885]), legal issues, such as issues of statutory construction, are reviewed de novo. (*Schram Construction, Inc. v. Regents of University of California* (2010) 187 Cal.App.4th 1040, 1052 [114 Cal.Rptr.3d 680]; *California School Employees Assn. v. Torrance Unified School Dist.* (2010) 182 Cal.App.4th 1040, 1044 [106 Cal.Rptr.3d 375].)

951] (*Robert L.*); accord, *Sutter's Place Inc. v. Superior Court* (2008) 161 Cal.App.4th 1370, 1381–1382 [75 Cal.Rptr.3d 9].) "In other words, our 'task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent.' (*Hi-Voltage Wire Works, Inc. v. City of San Jose* (2000) 24 Cal.4th 537, 576 [101 Cal.Rptr.2d 653, 12 P.3d 1068] (*Hi-Voltage*) (conc. & dis. opn. of George, C. J.).)" (*Robert L., supra*, 30 Cal.4th at p. 901.)

A.   *The Labor Code Reference Method Continues to Provide the Minimum Content of the Proposition 65 List*

   1.   *The Statute Is Ambiguous*

Section 25249.8, subdivision (a), states: "On or before March 1, 1987, the Governor shall cause to be published *a list* of those chemicals known to the state to cause cancer or reproductive toxicity within the meaning of this chapter, and he shall cause *such list* to be revised and republished in light of additional knowledge at least once per year thereafter. *Such list* shall include at a minimum those substances identified by reference in Labor Code Section 6382(b)(1) and those substances identified additionally by reference in Labor Code Section 6382(d)." (§ 25249.8, subd. (a), italics added.)

CalChamber contends the term "such list" refers to the initial Proposition 65 "list of those chemicals known to the state to cause cancer or reproductive toxicity." It thus reads the second sentence as mandating that the initial list "shall include at a minimum those substances identified by reference in Labor Code Section 6382(b)(1) and those substances identified additionally by reference in Labor Code Section 6382(d)." (§ 25249.8, subd. (a).)

CalChamber points out the term "such list" as used in the first sentence of section 25249.8, subdivision (a) clearly refers to the initial list the Governor was required to publish on or before March 1, 1987. It also points out the statute, by employing two subdivisions, structurally distinguishes between the Labor Code reference method set forth by itself in subdivision (a), and the Expert Review, Authoritative Body, and Formally Required to be Labeled listing methods set forth in subdivision (b). CalChamber also observes subdivision (b) begins by stating "[a] chemical is known to the state to cause cancer or reproductive toxicity . . . *if*" it is identified as such by any of the three, enumerated listing methods. (§ 25249.8, subd. (b), italics added.) CalChamber therefore contends the three methods enumerated in subdivision (b) supply the "additional knowledge" pursuant to which the Proposition 65 list is to be "revised and republished . . . at least once per year." (§ 25249.8, subd. (a).) CalChamber further observes there can be, and in fact, is, redundancy between the Labor Code reference method in subdivision (a),

and the Authoritative Body method set forth in subdivision (b).[12] Thus, CalChamber asserts reading "such list" to refer to the initial Proposition 65 list pays heed to the structure of the statute, fulfills the commitment to a scientifically based list, and avoids redundancies.

This construction is also consistent, CalChamber observes, with the statement in *Deukmejian* that "Section 25249.8, subdivision (a), insures the minimum content of the *initial list*, and section 25249.8, subdivision (b), directs both defendant and the Panel to engage in a diligent, thorough and continuing search for additional chemicals which evolving scientific knowledge demonstrates are subject to [Proposition 65]. Viewed in this light, the provisions of section 25249.8, subdivisions (a) and (b) are not inconsistent, but complementary." (*Deukmejian, supra*, 212 Cal.App.3d at p. 440, italics added.) The issue in *Deukmejian*, however, concerned the minimum content of the initial list, not the validity of methods by which that list is to be annually updated.[13]

OEHHA contends there is but a single Proposition 65 list, which had to be initially published and must "be revised and republished in light of additional knowledge at least once per year thereafter." (§ 25249.8, subd. (a).) Thus, "such list," as OEHHA reads the statutory language, means "the" Proposition 65 list, and the Labor Code reference method set forth in subdivision (a) fixes the minimum content of "the" list in any iteration. The three listing methods set forth in subdivision (b), in turn, complement and augment the Labor Code reference method.

OEHHA's reading of the statute is consistent with statements in *Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333 [15 Cal.Rptr.3d 430]. In that case, the court described the Proposition 65 listing process as follows: "At a minimum, the list, which is published by the Governor on an annual basis, must include substances identified in Labor Code section 6382.

---

[12] For example, the Labor Code reference method set forth in section 25249.8, subdivision (a) embraces "[s]ubstances listed as human or animal carcinogens by the [IARC]." (Lab. Code, § 6382, subd. (b)(1).) One of the bodies embraced by the Authoritative Body method set forth in Health and Safety Code section 25249.8, subdivision (b) is the IARC. (Cal. Code Regs., tit. 27, § 25306, subds. (*l*), (m).)

[13] In *Exxon Mobil, supra*, 169 Cal.App.4th at pages 1269–1270, the court similarly described section 25249.8, subdivision (b) as specifying the means by which chemicals are identified as "known to the state to cause cancer" and thereby included on the Proposition 65 list. "Thus, section 25249.8, subdivision (b) of the statute sets out three different ways by which a chemical can be listed." (*Exxon Mobil*, at p. 1269.) The issue in *Exxon*, however, was whether a chemical was properly listed under the Authoritative Body method set forth in subdivision (b). (*Exxon Mobil*, at pp. 1276–1278.) The issue in *Western Crop Protection Assn. v. Davis* (2000) 80 Cal.App.4th 741, 747–748 [95 Cal.Rptr.2d 631], was also whether chemicals were properly listed under the Authoritative Body method. Neither case involved, nor considered, use of the Labor Code reference method set forth in 25249.8, subdivision (a).

(§ 25249.8, subd. (a).)" (120 Cal.App.4th at p. 345.) In addition, a chemical must be listed "as known to the state to cause cancer or reproductive toxicity" if it is so identified pursuant to one of the listing mechanisms set forth in section 25249.8, subdivision (b). (120 Cal.App.4th at p. 345.) The issue in *Baxter*, however, concerned the procedure for obtaining an exemption once a chemical is listed. The case did not address either the content of the initial list or the listing methods applicable to subsequent revisions.

■ CalChamber and OEHHA both proffer semantically permissible constructions of the statutory language. Accordingly, we conclude the language is ambiguous and turn to other construction aids to resolve the issues before us. (See *County of San Joaquin v. Workers' Comp. Appeals Bd.* (2004) 117 Cal.App.4th 1180, 1185 [12 Cal.Rptr.3d 406, 410] [" 'To say that language is ambiguous is to say there is more than one semantically permissible candidate for application . . . .' "].)

### 2. *The Legislative History*

■ Where, as here, a statute enacted through the initiative process is ambiguous, " '[b]allot summaries and arguments may be considered when determining the voters' intent and understanding of a ballot measure.' " (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037 [56 Cal.Rptr.3d 814, 155 P.3d 226]; accord, *Robert L., supra*, 30 Cal.4th at pp. 900–901.)

The ballot argument in support of Proposition 65 stated in pertinent part: "Our present toxic laws aren't tough enough. Despite them, polluters contaminate our drinking water and expose us to extremely toxic chemicals without our knowing it. . . . [¶] . . . [¶] Proposition 65 singles out chemicals that are scientifically known to cause cancer or reproductive disorders . . . [and] tells businesses: Don't put these chemicals into our drinking water supplies. [¶] . . . [¶] Proposition 65 also tells businesses: Don't expose us to any of these same chemicals without first giving us a clear warning. We each have a right to know, and to make our own choices about being exposed to these chemicals. [¶] . . . [¶] Proposition 65's new civil offenses focus only on chemicals that are *known to the state* to cause cancer or reproductive disorders. Chemicals that are only suspect are not included. The Governor must list these chemicals, after full consideration with the state's qualified experts. At a minimum, the Governor must include the chemicals already listed as known carcinogens by two organizations of the most highly regarded national and international scientists: the [NTP] and the [IARC]." (Ballot Pamp., Gen. Elec. (Nov. 4, 1986) argument in favor of Prop. 65, p. 54.)

The arguments against Proposition 65 stated in part: "Proposition 65 won't produce useful warnings. [¶] It requires 'warnings' on millions of ordinary

and safe items. We won't know what products are really dangerous anymore. The warnings we really need will get lost in lots of warnings we don't need." (Ballot Pamp., Gen. Elec., *supra*, rebuttal to argument in favor of Prop. 65, p. 54, capitalization & italics omitted.) The opposition arguments further stated: "We have many thoughtful laws relating to toxic pollution on the books. . . . [¶] . . . [¶] Over 50 new laws have been passed in the last two years to control chemicals and toxics. [¶] We need to build on the system we have, not abandon it in favor of extreme 'solutions.' [¶] The simple scientific fact of the matter is that manmade carcinogens represent only a tiny fraction of the total carcinogens we are exposed to, most of which are natural substances . . . . Significant amounts of manmade carcinogens are highly regulated in California under the most stringent laws in the United States. This initiative will result in chasing after trivial amounts of manmade carcinogens at enormous cost with minimal benefit to our health." (Ballot Pamp., Gen. Elec., *supra*, argument against Prop. 65, p. 55, italics omitted.)

Responding arguments stated in part: "Proposition 65 simply says that businesses shouldn't put chemicals that are scientifically known to cause cancer, or birth defects, into your drinking water. And that they must warn you before they expose you to such a chemical. [¶] . . . [¶] . . . Proposition 65 is based strictly on scientific testing, more than any existing toxics law. [¶] . . . Proposition 65 does not apply to insignificant (safe) amounts of chemicals." (Ballot Pamp., Gen. Elec., *supra*, rebuttal to argument against Prop. 65, p. 55.)

CalChamber and OEHHA emphasize varying parts of this history. CalChamber points to the arguments asserting Proposition 65 focuses "only on chemicals that are *known to the state* to cause cancer or reproductive disorders. Chemicals that are only suspect are not included," and assurances that listing "is based strictly on scientific testing, more than any existing toxics law." (Ballot Pamp., Gen. Elec., *supra*, argument in favor of Prop. 65, p. 54; *id.*, rebuttal to argument against Prop. 65, p. 55.) Given this emphasis on scientific evaluation and certainty of knowledge, CalChamber contends the voters could not have intended that the Labor Code reference method— which excludes the state's experts from any role in the process and relies on the conclusions of other entities without review of the evidence even by OEHHA, let alone the state's experts—would be anything other than a stopgap method to create the initial list. The listing methods set forth in section 25249.8, subdivision (b), in contrast, emphasize scientific analysis and utilization of recognized experts.

OEHHA, in turn, points to the arguments that at "a minimum" the list "must include" chemicals listed by "the [NTP] and the [IARC]." These lists are embraced by the Labor Code reference method set forth in section

25249.8, subdivision (a), and it is only that listing method that guarantees the chemicals listed by the NTP and IARC are included on the Proposition 65 list. As for the proposition's emphasis on scientific evaluation, the ballot arguments characterize the NTP and IARC as "two organizations of the most highly regarded national and international scientists." (Ballot Pamp., Gen. Elec., *supra*, argument in favor of Prop. 65, p. 54.)

We appreciate that ballot arguments in support of and in opposition to initiative measures are carefully crafted sound bites intended to appeal to voter emotion as well as intellect. We also appreciate there is not always absolute congruence between ballot arguments and the letter of the attendant legislation. Nevertheless, in this case, we find the legislative history helpful and conclude the ballot materials more strongly support the construction urged by OEHHA than by CalChamber.

No distinction was made in the ballot materials between an "initial" Proposition 65 list and subsequent revised lists. Rather, the materials simply stated the Governor "must list these chemicals," the word "these" referring to "chemicals that are *known to the state* to cause cancer or reproductive disorders." The materials also unequivocally stated "[a]t a minimum, the Governor must include" on his list "chemicals already listed as known carcinogens by . . . the [NTP] and the [IARC]." (Ballot Pamp., Gen. Elec., *supra*, argument in favor of Prop. 65, p. 54.) These lists by the NTP and IARC, in turn, find their way onto the Proposition 65 list by virtue of the Labor Code reference method set forth in Health & Saf. Code, section 25249.8, subdivision (a). (Health & Saf. Code, § 25249.8, subd. (a); Lab. Code, § 6382, subds. (b)(1), (d).) The ballot materials also described the NTP and IARC as "two organizations of the most highly regarded national and international scientists." (Ballot Pamp., Gen. Elec., *supra*, argument in favor of Prop. 65, p. 54.) Thus, whether or not the lists prepared by the NTP and IARC are based on the same supposed state of scientific certainty as the Proposition 65 list, the ballot materials championed the scientific credentials of these organizations, thereby fulfilling the promised scientific basis for listing.

3. *Implementation History*

The implementation history of the Proposition 65 list, as we have discussed, is problematic and does not weigh strongly in favor of either CalChamber or OEHHA. For the first 15 years following the enactment of the proposition, OEHHA indicated changes to the Proposition 65 list were to be made by the three methods—Expert Review, Authoritative Body, and Formally Required to be Labeled methods—set forth in subdivision (b) of section 25249.8. OEHHA's published documents, for example, described "three mechanisms by which carcinogens and reproductive toxins are listed" and

254

explained how each worked. The documentation made no mention of the Labor Code reference method set forth in section 25249.8, subdivision (a).

For the past decade, however, OEHHA has used the Labor Code reference method to make changes to the Proposition 65 list. It first used this method in 2001 to "de-list" saccharin, without objection. Since then, it has periodically used this method to both list and delist chemicals. Listing has triggered some objections that the Labor Code reference method applied only to the initial Proposition 65 list. Delisting has drawn no objections.

■ Other than a vague reference to a "pragmatic decision" to "turn its resources to other listing mechanisms after compiling the initial Labor Code-based minimum list in 1987," OEHHA has never provided any explanation for not using the Labor Code reference method to revise the Proposition 65 list until 2001. Nonetheless, regardless of the reasons for OEHHA's shift in focus, its prior practice did not preclude it from changing course and using the Labor Code reference method in section 25249.8, subdivision (a) as one of the methods by which it revises and updates the list. (See *Henning v. Industrial Welfare Com.* (1988) 46 Cal.3d 1262, 1269–1270 [252 Cal.Rptr. 278, 762 P.2d 442] ["an administrative agency may change its interpretation of a statute, rejecting an old construction and adopting a new. [Citations.] Put simply, 'An administrative agency is not disqualified from changing its mind . . .' " unless the old construction it chooses to reject "has been definitively adopted by a court as its own."].)

■ OEHHA has not enacted regulations pertaining to its current use of the Labor Code reference method to list and delist chemicals. Accordingly, its use of the method does not carry the interpretive weight that adheres to formal regulations adopted by an agency charged with implementing a statutory scheme.[14] (*Culligan Water Conditioning v. State Bd. of Equalization* (1976) 17 Cal.3d 86, 92 [130 Cal.Rptr. 321, 550 P.2d 593]; *Mackey v. Bristol West Ins. Service of Cal., Inc.* (2003) 105 Cal.App.4th 1247, 1263 [130 Cal.Rptr.2d 536] [agency interpretation in informational booklet entitled to less weight than formal regulation].)

■ It is also true that an agency's vacillating practice—i.e., adopting a new interpretation that contradicts a prior interpretation—is entitled to little or no weight. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 13 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) However, OEHHA never expressly stated the Labor Code reference method was no longer applicable; it simply was silent. (See *Estate of Giolitti* (1972) 26 Cal.App.3d 327, 335

[14] OEHHA started the process of enacting such regulations before this lawsuit was filed, but has deferred further action pending the outcome of the litigation.

[103 Cal.Rptr. 38] [" '[m]ere failure to act, however, does not constitute' " a prior inconsistent administrative construction].) Furthermore, since 2001, OEHHA has consistently and publicly interpreted the Labor Code reference method as applying to revisions of the Proposition 65 list. It has explained its reasons for doing so in formal responses to public comments on listing notifications, letters to members of the regulated community and in a public proposal for comments on a formal regulation explaining its interpretation of the process of identifying chemicals for listing under this method.

Accordingly, OEHHA's decade-long practice of using the Labor Code reference method to revise the Proposition 65 list is worthy of some, albeit slight, note. (See *American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728, 750–752 & fn. 25 [102 Cal.Rptr.3d 759] [some weight given to agency practice followed for 12 years as stated in policy memorandum and letters written by USDA officials despite evidence interpretation had changed over the years]; *Yosemite Park & Curry Co. v. Department of Motor Vehicles* (1960) 177 Cal.App.2d 448, 454–455 [2 Cal.Rptr. 431] [weight given to agency's long-standing practice of not collecting certain taxes that was contrary to agency's litigation position].)

### 4. *Canons of Construction*

■ CalChamber contends a reading of section 25249.8 that gives continued life to the Labor Code reference method set forth in subdivision (a) violates numerous canons of statutory construction. It points to the canon of construction that identical terms should have the same meaning when used multiple times in a statute. (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 288–289 [93 Cal.Rptr.3d 369, 206 P.3d 739]; *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 643 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) As we have discussed, the term "such list" in the first sentence of subdivision (a) of section 25249.8 clearly refers to the list the Governor was required to publish on or before March 1, 1987. (§ 25249.8, subd. (a).) CalChamber therefore asserts the second sentence—which starts with the directive "Such list shall include at a minimum" those chemicals identified pursuant to the Labor Code reference method—must also refer only to that initial list. (*Ibid.*)

However, as OEHHA observes, the term "such list" even in the first sentence of subdivision (a) can also be read to mean "the" Proposition 65 list, which the Governor was required to publish by March 1, 1987, and which must be "revised and republished . . . at least once per year thereafter." (§ 25249.8, subd. (a).) The term as used in the second sentence can also be read to mean "the" Proposition 65 list. Accordingly, the construction supported by the legislative history and the recent implementation history need

not result in the term "such list" having different meanings in the first and second sentences of subdivision (a).

■   CalChamber also invokes the rule that a statute must not be construed in a manner that renders some of its provisions superfluous. (See *Deukmejian, supra,* 212 Cal.App.3d at p. 435.) As we have discussed, there can be, and there in fact is, some overlap between the Labor Code reference method set forth in subdivision (a) of section 25249.8 and the Authoritative Body method set forth in subdivision (b). The Labor Code reference method, for example, embraces lists prepared by the NTP and IARC, while the Authoritative Body method includes these two scientific bodies pursuant to designation by the state's expert panel. This overlap, however, is not inherent in the statute. While the state expert panel has chosen to include the NTP and IARC within the Authoritative Body method, there is no requirement that it do so. Moreover, the Authoritative Body method allows for the designation of additional authorities, such as the FDA and EPA, which are not sources encompassed by the Labor Code reference method. Thus, there is no inherent redundancy within the statute.

■   CalChamber contends ongoing use of the Labor Code reference method set forth in section 25249.8, subdivision (a) also effectively reads out of the statute the discretion afforded to the Governor under subdivision (d). Subdivision (d) provides: "The Governor shall identify and consult with the state's qualified experts as necessary to carry out his duties under this section." (§ 25249.8, subd. (d).) This is a limited mandate—subdivision (d) provides the Governor "shall" consult with the state's experts only "as necessary." Since the Labor Code reference method set forth in subdivision (a) requires no action by the Governor, it does not impinge on the Governor's conditional obligations under subdivision (d).

■   CalChamber additionally invokes the rule of construction discussed in *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53 [195 P.2d 1] (*Palermo*). This rule provides "where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified . . . ." (*Id.* at pp. 58–59.) CalChamber contends that under this rule, "the Proposition 65 list was limited to those substances already identified by the sources referenced in subdivisions (b)(1) and (d) of Labor Code section 6382 when voters adopted Proposition 65." In other words, CalChamber asserts that under *Palermo*, the Labor Code reference method was frozen in time and only those chemicals included on lists embraced by subdivisions (b)(1) and (d) of Labor Code section 6382 at the time Proposition 65 was enacted can be listed.

We do not agree *Palermo* requires this result. In *Palermo*, the incorporating statute gave rights to foreign corporations to hold property under " 'any treaty *now existing*' " between the United States and Japan. (*Palermo, supra*, 32 Cal.2d at p. 55, italics added.) The Supreme Court held the state statute incorporated rights under the federal treaty as it existed at the time the statute was enacted, and foreign corporations retained those rights under the state law even after the treaty was abrogated. (*Id.* at pp. 60–63; see, e.g., *People v. Domagalski* (1989) 214 Cal.App.3d 1380, 1385 [263 Cal.Rptr. 249] [when the canon of specific reference applies, the effect is " 'the same as if the adopted statute had been set out verbatim in the adopting statute,' " so that repeal or modification of the referenced statute does not affect the incorporating statute].) The court also recognized " 'a cognate rule.' " (*Palermo*, at p. 59.) " '[W]here the reference is general instead of specific, such as . . . to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time . . . .' " (*Ibid.*; see also *In re Jovan B.* (1993) 6 Cal.4th 801, 816 [25 Cal.Rptr.2d 428, 863 P.2d 673].)

Here, the incorporated law analogous to the federal treaty in *Palermo* is Labor Code section 6382, and specifically subdivisions (b)(1) and (d). Accordingly, if the first rule recognized in *Palermo* applies, as CalChamber contends, what must be deemed to have been written into Proposition 65 is the language of those subdivisions as they existed at the time the proposition was enacted. There is no issue in this regard, however, because the language of Labor Code section 6382, subdivisions (b)(1) and (d), is the same today as it was when Proposition 65 was enacted. (Stats. 1980, ch. 874, § 1, pp. 2735, 2737; Stats. 1985, ch. 1000, § 1, p. 3211.) In fact, there also has been no change in the relevant language of "the federal [HCS] (29 C.F.R. Sec. 1910.1200)" to which subdivision (d) of section 6382 refers.[15] (Compare 29 C.F.R. ch. XVII, C7 (1987) with 29 C.F.R. § 1910.1200(c), (d) (2010).)

Thus, what CalChamber actually urges is that *Palermo* extends beyond the expressly incorporated statutes—indeed, beyond even the regulations expressly incorporated by the expressly incorporated statutes—to reach the specific substances identified on the lists referenced by Labor Code section 6382, subdivisions (b)(1) and (d), at the time Proposition 65 was enacted. In other words, according to CalChamber, what must be deemed to have been written into Proposition 65 is not only the language of Labor Code section 6382, subdivisions (b)(1) and (d), and the language of the "the federal [HCS] (29 C.F.R. § 1910.1200)," but also all lists of identified substances referenced

---

[15] Specifically, there has been no change to title 29 Code of Federal Regulations part 1910.1200(c) (2010) defining "health hazard" and (d) (2010) addressing "hazard determination."

by these statutory and regulatory provisions. Nothing in *Palermo* requires such a burdensome or labyrinthine result. Furthermore, unlike in *Palermo*, the incorporating statute here, section 25249.8, subdivision (a), anticipates change, by mandating annual revision and republication of the Proposition 65 list. (§ 25249.8, subd. (a).)

██ The canons of construction, in any case, are among the aids the courts can employ in reaching a reasoned interpretation of a statute. (*People v. Traylor* (2009) 46 Cal.4th 1205, 1213 [96 Cal.Rptr.3d 277, 210 P.3d 433].) They are not to be rotely applied in disregard of other indicia of the intent and purpose of the body which enacted the statutory provision in question. Rather, our overarching task is to determine the intent of such body and interpret the statute consistently therewith. "[A]lthough the rules of grammar and the canons of construction are useful tools in divining a statute's purpose, the normal principles of statutory interpretation may not, in particular circumstances, disclose a clear legislative intent . . . . In such a situation . . . courts must remember that ' "[t]hose who write statutes seek to solve human problems. Fidelity to their aims requires us to approach an interpretive problem not as if it were a purely logical game, like a Rubik's Cube, but as an effort to divine the human intent that underlies the statute." [Citations.]' [Citation.]" (*Ibid.*)

### 5. *Purpose of the Statutory Scheme*

"The purposes of Proposition 65 are stated in the preamble to the statute, section 1 . . . ." (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 306 [58 Cal.Rptr.2d 855, 926 P.2d 1042] (*Lungren*).) The preamble states: "The people of California find that hazardous chemicals pose a serious potential threat to their health and well-being, that state government agencies have failed to provide them with adequate protection, and that these failures have been serious enough to lead to investigations by federal agencies of the administration of California's toxic protection programs. The people therefore declare their rights: [¶] (a) To protect themselves and the water they drink against chemicals that cause cancer, birth defects, or other reproductive harm. [¶] (b) To be informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm. [¶] (c) To secure strict enforcement of the laws controlling hazardous chemicals and deter actions that threaten public health and safety. [¶] (d) To shift the cost of hazardous waste cleanups more onto offenders and less onto law-abiding taxpayers. [¶] The people hereby enact the provisions of this initiative in furtherance of these rights." (Ballot Pamp., Gen. Elec., *supra*, text of Prop. 65, p. 53, italics omitted.)

██ In light of these findings, Proposition 65 is "a remedial statute" and therefore should be broadly construed to accomplish its protective purposes. (*Lungren, supra*, 14 Cal.4th at pp. 306–307, 314.)

We heed this interpretative admonition in concluding the Labor Code reference method set forth in subdivision (a) of section 25249.8 is to be used in revising the Proposition 65 list, and the three listing methods set forth in subdivision (b) are additional means by which changes can be made to the list. This construction ensures the Proposition 65 list of chemicals "known to the state to cause cancer or reproductive toxicity" *always* includes "at a minimum" those substances identified by reference to Labor Code section 6382, subdivisions (b)(1) and (d)—i.e., those chemicals that already must be treated as carcinogens or reproductive toxins for the purpose of HSITA (Lab. Code, § 6360 et seq.) and the federal HCS (29 C.F.R. § 1910.1200 (2010)). The stated concern "that state government agencies have failed to provide . . . adequate protection" with respect to "known carcinogens and reproductive toxins" (Ballot Pamp., Gen. Elec., *supra*, text of Prop. 65, p. 53) is thereby assuaged, and the declared right to "be informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm" (*ibid.*), broadly secured.

That said, we appreciate CalChamber's fundamental concern—that given the significant costs attendant to listing, several key assurances were made with respect to Proposition 65, including that listing would be based on solid science and the list would include only chemicals "known to the state to cause cancer or reproductive toxicity" and not "only suspect." In this regard, the saccharine episode is, indeed, cause for pause. Listed as a chemical "known to the state to cause cancer" for 15 years pursuant to the Labor Code reference method, science ultimately concluded otherwise, and saccharine was "de-listed." Thus, despite the statutory descriptor of the list—as including chemicals "known" to the state to cause cancer or reproductive toxicity— the list, in fact, also includes chemicals only suspected to cause such harms and which, upon further research, may prove to have no such pernicious affect.

However, through the millennium, science has never been static, and what is "known" is necessarily defined by the state of the art at the time. And while CalChamber singles out the Labor Code reference method set forth in section 25249.8, subdivision (a) as scientifically deficient—devoid as it is of any independent analysis by OEHHA, let alone the state's experts—two of the listing methods set forth in subdivision (b) also include little or no independent review. Under the Authoritative Body method, OEHHA reviews listings to determine if they are supported by "sufficient evidence" as defined in the regulations, but does not " 'substitute its scientific judgment for that of the authoritative body.' " (*Exxon Mobil, supra*, 169 Cal.App.4th at p. 1283; see Cal. Code Regs., tit. 27, § 25306, subds. (c), (e)–(g).) It refers a listed substance to the state's experts only if it concludes "no substantial evidence"

supports the authoritative body's listing determination.[16] (Cal. Code Regs., tit. 27, § 25306, subd. (i).) The Formally Required to be Labeled method entails no review by OEHHA or the state's experts. OEHHA must limit a chemical "if . . . [it] . . . determines that an agency of the state or federal government has formally required the chemical to be labeled or identified as causing cancer or reproductive toxicity."[17] (Cal. Code Regs., tit. 27, § 25902, subd. (a).) Accordingly, the absence of independent evaluation by OEHHA or the state's experts does not render the Labor Code reference method set forth in section 25249.8, subdivision (a) an anomaly within the statutory scheme.

In sum, given the remedial purposes of Proposition 65 and the mandate that it be broadly construed, we conclude the Labor Code reference method set forth in subdivision (a) of section 25249.8 continues to specify the minimum content of the Proposition 65 list as it is revised and republished.

B.   *The Labor Code Reference Method Includes Reproductive Toxins on the ACGIH List*

CalChamber additionally contends that even if the Labor Code reference method set forth in subdivision (a) of section 25249.8 specifies the minimum content of all iterations of the Proposition 65 list, it should not be construed to reach chemicals identified as reproductive toxins on the "current" ACGIH list.[18] CalChamber observes neither subdivision (a) of section 25249.8 of the

---

[16] As OEHHA explained in its final statement of reasons issued when it adopted regulations applicable to the Authoritative Body method: "The apparent purpose of the authoritative bodies provision [of Proposition 65] is to establish a streamlined process for the Panel. Rather than review each chemical already subjected to review by another organization, the Panel needs only determine the organization's competence. The chemicals which the organization has formally identified as causing cancer or reproductive toxicity can then be listed. This permits the Panel to focus its attention on chemicals which have not previously been evaluated." (OEHHA, Final Statement of Reasons for Cal. Code Regs., tit. 22, div. 2, former § 12306 (Feb. 1990) p. 8.)

[17] Indeed, in its final statement of reasons issued when it adopted regulations applicable to the Formally Required to be Labeled method, OEHHA addressed objections that this method involved no analysis and review by state experts. OEHHA explained the method "is clearly intended to be a totally separate and distinct method of listing chemicals . . . designed to recognize the determinations of other federal and state agencies and does not contain any authority by which [OEHHA] could impose a requirement of making an independent determination of carcinogenicity or reproductive toxicity. The only question which is relevant is whether a state or federal government agency possessing the requisite legal authority, has formally required a third party to label or identify a chemical as causing cancer or reproductive toxicity. Once that question has been answered in the affirmative, listing of the chemical must occur." (OEHHA, Final Statement of Reasons for Cal. Code Regs., tit. 22, div. 2, former § 12902 (Mar. 1990) pp. 6–7.)

[18] ACGIH is " 'an organization devoted to the administrative and technical aspects of occupational and environmental health. . . . [It] is a professional society, not a government agency.' . . . ACGIH's work reflects 'scientific opinion based on a review of existing

Health and Safety Code, nor subdivisions (b)(1) and (d) of Labor Code section 6382 referenced therein, identifies or refers to the ACGIH list as a source of chemicals "known to the state to cause cancer or reproductive toxicity." (§ 25249.8, subd. (a).) It therefore claims subdivision (a) of section 25249.8 is ambiguous as to utilization of the ACGIH list and asserts this ambiguity should be resolved against its use since the ballot arguments mentioned only lists prepared by the NTP and IARC. Such a construction also avoids, according to CalChamber, potential dilution of the scientific standards undergirding Proposition 65.

■ There is no question one must drill down through several layers of statutes and regulations to identify the sources embraced by the Labor Code reference method. As we have discussed, this listing method embraces substances "identified by reference in Labor Code section 6382(b)(1) and those substances identified additionally by reference in Labor Code section 6382(d)." (§ 25249.8, subd. (a).) Labor Code section 6382, subdivision (b)(1), expressly refers to "[s]ubstances listed as human or animal carcinogens by the [IARC]." (Lab. Code, § 6382, subd. (b)(1).) Labor Code section 6382, subdivision (d), does not identify any particular listing source. Instead, it refers to any "substance within the scope of the federal [HCS] (29 C.F.R. Sec. 1910.1200)." (*Id.*, § 6382, subd. (d).)

However, the fact Labor Code section 6382, subdivision (d), does not expressly refer to any specific listing source(s) does not give rise to any ambiguity as to use of the ACGIH list. Rather, subdivision (d)'s explicit reference to "substance[s] within the scope of the federal [HCS] (29 C.F.R. Sec. 1910.1200)" provides a clear roadmap as to the listing sources it embraces.

Subpart (b)(1) of title 29 Code of Federal Regulations part 1910.1200 (2010) generally describes the scope of the HCS—requiring the evaluation of hazards and, if hazards are identified, communication of information about them. (29 C.F.R. § 1910.1200(b)(1) (2010).) Subpart (d) of title 29 of the Code of Federal Regulations part 1910.1200 (2010) describes the standards for "hazard determination," including providing aids for identifying hazardous substances. (29 C.F.R. § 1910.1200(d) (2010).) To that end, as we have discussed, subpart (d) has two subsections, (3) and (4).

Subpart (d)(4) deals exclusively with carcinogens and provides that if a chemical is identified as such in any one of three sources, it "shall" be treated

peer-reviewed scientific literature by committees of experts in public health and related sciences . . . [of] the level of exposure that the typical worker can experience without adverse health effects.' " (*National Assn. of Manufacturers v. Occupational Safety & Health Administration* (2007) 376 U.S. App.D.C. 171 [485 F.3d 1201, 1203].)

as a carcinogen and information must be transmitted regarding that hazard. The three sources are: (1) The "[NTP] *Annual Report on Carcinogens* (latest edition)"; (2) "[IARC] *Monographs* (latest editions)"; and (3) 29 Code of Federal Regulations part 1910, subpart Z (2010) (OSHA Subpart Z). (29 C.F.R. § 1910.1200(d)(4) (2010).) CalChamber has no quarrel with OEHHA's reference to these sources to identify carcinogens for inclusion in the Proposition 65 list since subpart (d)(4) deals exclusively with identified carcinogens.

However, subpart (d)(3) is more general and applies to *all* hazards, including carcinogens and reproductive toxins. (29 C.F.R. § 1910.1200(c), (d)(3) (2010).) Subpart (d)(3) requires chemical manufacturers, importers and employers to treat as hazardous chemicals identified by two sources: (1) OSHA Subpart Z (29 C.F.R. § 1910.1200(d)(3)(i) (2010)) and (2) the ACGIH list (29 C.F.R. § 1910.1200(d)(3)(ii) (2010)). As CalChamber points out, Proposition 65 does not require the listing of all hazardous substances, but only those "known to the state to cause cancer or reproductive toxicity." (§ 25249.8, subd. (a); see *Deukmejian, supra*, 212 Cal.App.3d at p. 438.)

It can be readily determined, however, which substances have been identified as reproductive toxins in the ACGIH list (29 C.F.R. § 1910.1200(d)(3)(ii) (2010)). The list includes a "Basis" column which identifies the particular adverse effect(s) upon which a listing is based—e.g. "Basis" for Carbaryl is "Male Repro damage, embryo damage." The ACGIH also provides written summaries, known as "documentation," which describe the scientific information and data on which the ACGIH relied in identifying the basis for listing. Accordingly, OEHHA can as readily identify reproductive toxins on the ACGIH list referenced by subpart (d)(3) as it can carcinogens on the lists prepared by the three sources identified by subpart (d)(4).

CalChamber asserts there is nevertheless a latent ambiguity because the federal HCS applies to chemicals used in the workplace (29 C.F.R. § 1910.1200(b)(1)–(2) (2010)) and exempts chemicals in foods, drugs, cosmetics, and consumer products (29 C.F.R. § 1910.1200(b)(6)(vi)–(ix) (2010)). Thus, as CalChamber sees it, the reference in Labor Code section 6382, subdivision (d), ·to "substance[s] within the scope of the federal [HCS] (29 C.F.R. Sec. 1910.1200)"—if read "literally"—would mean only workplace chemicals could be included on the Proposition 65 list pursuant to Labor Code section 6382, subdivision (d). It contends this would result in an "absurdity" and therefore the reference to the federal HCS cannot be deemed unambiguous and must be·"interpreted" in light of other indicia bearing on the electorate's intent. However, the venue limitations of the HCS are immaterial. The Proposition 65 list must include "substances identified by reference to" Labor Code section 6382, subdivisions (b)(1) and (d), and the statutory and regulatory trail leads plainly to the ACGIH list.

██ Accordingly, we do not perceive any ambiguity in section 25249.8, subdivision (a), with respect to the inclusion in the Proposition 65 list of reproductive toxins identified by the "current" ACGIH list. We therefore need not consider other indicia of legislative intent. (See *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] [if statutory language is unambiguous, it is not necessary to resort to indicia of intent].) However, even if we were to do so, we are not persuaded it evinces intent not to incorporate the ACGIH list.

As we have recited, the ballot materials stated in part: "At a minimum, the Governor must include the chemicals already listed as known carcinogens by two organizations of the most highly regarded national and international scientists: the [NTP] and the [IARC]." CalChamber contends failure to mention the ACGIH reflects an intent that it not be used as a listing source. However, when the ballot materials are considered in light of the express language of the initiative, which was also included in the voter materials, it is more reasonable to read the references to the NTP and IARC as illustrative of the kinds of organizations providing "minimum" listing content. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 237 [45 Cal.Rptr.2d 207, 902 P.2d 225] [no inference should be drawn from failure of ballot argument to list all changes initiative would enact because ballot arguments are not legal briefs]; *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 802 [268 Cal.Rptr. 753, 789 P.2d 934] ["The most reasonable inference is that the proponents chose to emphasize (in the limited space available for ballot arguments) what they perceived as the greatest need."].)

Had the intent been to limit listing sources to the NTP and IARC, the statutory language could easily have been drafted to do so. But it was not. Instead, the statute expressly refers to substances "identified by reference in Labor Code 6382(b)(1) and those substances identified additionally by reference in Labor Code 6382(d)." (§ 25249.8, subd. (a).) As we have explained, subdivision (d) of Labor Code section 6382 refers expressly to "substance[s] within the scope of the federal [HCS] (29 C.F.R. Sec. 1910.1200)," which, in turn, leads directly to title 29 Code of Federal Regulations part 1910.1200(d)(3) of the HCS, which, in turn, refers to the ACGIH list. Indeed, the ballot materials also make no mention of OSHA Subpart Z, which is referenced in both subpart (d)(3) and (4) of the HCS. (29 C.F.R. § 1910.1200(d)(3)(ii), (4) (2010).) Yet, CalChamber makes no argument the Labor Code reference method does not embrace substances identified under that OSHA provision.

Furthermore, when Proposition 65 was enacted it was already established that a substance was deemed hazardous under the HCS if it was on the latest

edition of the ACGIH List. (29 C.F.R. § 1910.1200(d)(3)(ii) (2010).) When OSHA published its statement of reasons for the final version of 29 Code Federal Regulations part 1910.1200 (1983), it explained: "[S]ome minimal criteria should be established so that certain chemicals will be regarded uniformly as hazards by all evaluators." (48 Fed.Reg. 53280, 53298 (Nov. 25, 1983).) To this end, it chose to require manufacturers, importers and employers to treat a substance as hazardous if so identified in several well-recognized sources to which manufacturers already routinely referred to obtain hazard information: (1) IARC, NTP and OSHA Subpart Z for identification of carcinogens and (2) the ACGIH list and OSHA Subpart Z for all other hazards, which include reproductive toxins. (48 Fed.Reg. 53280, 53296–53298 (Nov. 25, 1983).)

This established "a 'floor'—a minimum number of chemicals required to be covered. In any situation, the manufacturer or importer is required to treat chemicals regulated by OSHA or listed by the ACGIH on their TLV list as being hazardous [under the HCS]. In addition, any chemical which is listed by the NTP or IARC as a suspected or confirmed carcinogen is also to be treated as a potential carcinogen under this standard." (48 Fed.Reg. 53280, 53299 (Nov. 25, 1983); see *National Association of Manufacturers v. Occupational Safety & Health Administration, supra*, 485 F.3d at p. 1203 ["[a] chemical[] must be treated as hazardous if included in the 'latest edition' of the 'Threshold Limit Values for Chemical Substances and Physical Agents in the Work Environment' . . . published by the [ACGIH]," and this has been a requirement since title 29 C.F.R. § 1910.1200 was first promulgated in 1983]; *Associated Builders & Contractors, Inc. v. Brock* (1988) 862 F.2d 63, 69 [adoption of ACGIH list "as a floor, while imposing on chemical manufacturers the requirement that they research and assess hazards independently" is consistent with statutory directive "to set toxic substance standards based on 'the best available evidence' with due consideration to 'the latest available scientific data' "].)

In light of this established regulatory history, the reference in section 25249.8, subdivision (a), to Labor Code section 6382, subdivision (d), which, in turn, refers to any substance "within the scope of the federal [HCS]" (Lab. Code, § 6382, subd. (d)), reflects an intent to encompass the "floor lists" used to establish the minimum uniform criteria for identifying hazards under the HCS, including that prepared by the ACGIH.

We have already discussed and rejected CalChamber's contention that the Labor Code reference method is at odds with the asserted scientific underpinnings of the Proposition 65 list. CalChamber makes the same argument with respect to interpreting the reference to Labor Code 6382, subdivision (d), as reaching the ACGIH list. It points out a hazard exists under the federal HCS

if "there is statistically significant evidence based on at least one study conducted in accordance with established scientific principles" that the hazard "may occur in exposed employees." (29 C.F.R. § 1910.1200(c), (d)(2) (2010).) Proposition 65, in contrast, requires listing of chemicals "known to the state to cause cancer or reproductive toxicity." (§ 25249.8, subd. (a).) Nevertheless, section 25249.8, subdivision (a), expressly refers to Labor Code section 6382, subdivision (d), which, in turn, expressly refers to the HCS. Thus, by its own terms, section 25249.8, subdivision (a), accepts the HCS standard, and the listing standards it embraces, as sufficient.

■ In sum, again heeding the remedial purposes of Proposition 65 and the mandate that it be broadly construed, we conclude the Labor Code reference method set forth in section 25249.8, subdivision (a), and specifically its express reference to Labor Code section 6382, subdivision (d), embraces reproductive toxins identified on the "current" ACGIH list.

### IV. DISPOSITION

The judgment is affirmed.

Marchiano, P. J., and Margulies, J., concurred.